

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eugene Gregory Dews, pro se<br>PLAINTIFF | : | SUED IN THEIR OFFICIAL<br>AND INDIVIDUAL CAPACITY |
| | : | |
| VS. | : | |
| | : | |
| Cynthia Link, Ex-Superintendent, SCI-<br>Graterford; Correctional Officer Ms. Djanah<br>McCollough, SCI-Graterford; Correctional<br>Officer (Sergeant) Pedro Mirabel, Graterford;<br>Department Of Corrections; Mr. Joseph C.<br>Korszniak, (CHCA) Correctional Health Care<br>Administrator SCI-Graterford; Correct Care<br>Solution, SCI-Graterford Contract Medical<br>Provider. | : | CIVIL ACTION COMPLAINT<br>1983 |
| | : | |
| | NO. | **18   4285** |
| | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| DEFENDANTS | : | |

## PRELIMINARY STATEMENT:

1. This is a Civil Rights Action filed by Mr. Eugene Gregory Dews, a State prisoner for damages and injunction relief under 42 U.S.C. § 1983 to redress the deprivation under color of State Law, of rights secured by the Constitution of the United States, claiming denial of medical care which rise to cruel and unusual treatment, wonton infliction of pain, deliberate indifference, for violations of Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act of 1973, as amended ("RA"), 29 U.S.C. § 794. In violation of Mr. Dews' First, Eight and Fourteenth Amendment of the United States Constitution, and in violation of the Due Process Clause for violation for retaliation for filing previous Lawe Suit and inmate grievances.

## JURISDICTION:

2. This Honorable Court has the Jurisdiction over the claims of violation of Federal Constitutional Rights under 42 U.S.C. §§§ 1331 (a) 1343 and 1983.

## PRIOR CIVIL RIGHTS ACTIONS:

3. Two Civil Actions filed, (1)-Eugene G. Dews V. Pa. Department of Corrections, No. #14-03048-JTS (E.D.Pa.) (resolved) in favor of plaintiff. 2. Eugene G. Dews V. Pa. Dep't of Corrections, No. #17-3703-JTS (E.D.Pa.) pending 42 U.S.C § 1983 Civil Actions filed in Federal Court by plaintiff and appointed counsel.

## ADMINISTRATIVE EXHAUSTION REMEDIES:

4. All remedies have been exhausted. Plaintiff has filed Ten (10) grievances, #677003, #676987, #676975, #676016, #676985, #678507, #678622,

the Hihest Administrative office of authority, relief was denied.

Request For ADA Accommodation for pat search procedure sent to Mr. Joseph C. Korszniak, (CHCA) DC-ADM 006 Submitted on April 27, 2017, was never responded to by the (CHCA).

## PARTIES/PLAINTIFF:

5. The plaintiff is Mr. Eugene G. Dews BJ-3445 who is currently housed as SCI-Graterford Correctional Institution, P.O. Box 244, Graterford, Pa. 19426

## DEFENDANTS:

6. Ms. Cynthia Link, Ex-Superintendent, Correctional Institution at Graterford, P.O. Box 244, Graterford, Pa. 19426.

7. Ms. Djanah McCollough, Correctional officer at SCI-Graterford Correctional Institution, P.O. Box 244.

8. Mr. Pedro Mirahel Correctional Officer Sgt. at SCI-Graterford Correctional Institution, P.O. Box 244, Graterford, Pa. 19426

9. Mr. Joseph C. Korszniak, (CHCA) Correctional Health Care Administrator, at SCI-Graterford Correctional Institution, P.O. Box 244 Graterford, Pa. 19426

10. The Department of Corrections 1920 Technology Parkway, Mechanicsburg, Pa. 17050.

11. Correct Care Solutions 1283 Murfseesboro Rd., Suite 500 Nashville, Tn. 37217

### FACTUAL ALLEGATIONS:

### A. Mr. Dews' Serious Medical Conditions:

12. Mr. Dews is a diabetic needing insulin injections on a daily basis. At 6;30am Mr. Dews goes to the institutional medical department to perform a finger stick test to determine his blood glucose levels. If Mr. Dews' glucose level reading is 200 or above, Mr. Dews is to receive an insulin shoot.

13. This process is repeated at approximately around 6 o'clock pm. in the evening with one differentation, no matter what Mr. Dews' glucose level reading is, Mr. Dews is to receive 32 units of lantis insulin. If Mr. Dews' glucose level reading is over 200, Mr. Dews would receive two shoots of insulin; one would be (R) regular which brings Mr. Dews' glucose level below 200 quickly, the other is lantis, which works gradually, twenty four hour acting.

14. Mr. Dews also suffers from IBS, ill-regular bowel syndrome, partly because of the pain medications that has to be taken by Mr. Dews to alleviate server pain from neuropathy, double crushed nerves in his neck, corpal tunnel, as well as significanty pain from 2007 prior major back surgery, (Spinal Stennosis, lumbar-fusion of four disc Laminectomy.

2.

15. Mr. Dews has two six inch rods and six screws in his back as a result of the surgery, the pain medications Mr. Dews takes are (100mg of 900mg of neurotin, 50mg of baclafin) all three time a day which cause server constipation, as well as numerous other medications that have the same affect; mini press, trazadone, aspirin, metform, gemifibrozil, hydralazine, cavedilol, amlodipine, losartan/Hctz, mi-acid gas, acid gone antacid, and lactulose.

16. The plaintiff Mr. Eugene G. Dews, BJ-3445, is an inmate who has been housed at the State Correctional Institution Graterford for the past twenty four years straight, twenty eight in total of incarceration, that roughly.

17. Around 2004 plaintiff was experiencing server back pain that was debilitating and was told that it was arthiritist and was given a back brace to were, and was issued on the permanent basis, see exhibit-E.

18. Wherein, in 2007 plaintiff had serious back problems that were so serious that plaintiff could not get out of his bed, after an MRI performed on the plaintiff, it was discovered that plaintiff had four herniated disc in his back and spinal stenosis, inter alia, Following extreme back surgery, Mr. Dews had two six inch rods and six screws were placed in his back.

19. The medical staff would not issue me a medical blue pass to show officers posted at the metal detectors because the medical department does not provide such passes, for me to just tell the officers about the surgical parts in my body and ask could they pat search me.

20. Since 2007 the plaintiff had no problems with the institutional officers until now eleven years later by these two officers, who have patted plaintiff down for a few years at their post.

21. All the metal detector's were not callerbrated the same, this caused some to clear me and then not clear me, plaintiff could walk through the detector and it would sound off and immediately go back through that detector and it would clear plaintiff. Officers Mr.Getz and Mr. B.A. Muhammd who were officers assigned to the front doors of plaintiff's housing unit, and witnessed the happenings of the metal detector.

22. Along with this major surgery, plaintiff was told by a doctor Ms. Maureene Cardenas Pa-C in 2005 after the discovery of my back injuries that I was going to have to wear a back brace for the rest of my life, see exhibit E-1, and since having the back surgery, no doctor have ever told me that I do not need to wear the back brace for support.

3.

contortions as well as draw strings that tighten the brace. As the doctors have told me, "the tighter that you can get the brace, the more relief it will provide.

24. Al the officers in the institution who are posted at a doort or gate that has a metal detector, which is about ten metal detectors that plaintiff has to pass through to get to his destination, knows about the problematic issue with the metal detectors, and pat serach plaintiff except these two officers, Ms. Djanah McCollough and sergeant Mr. Pedro Mirabel, who denies me excess to my medical care and pain medication lines and school ten times.

25. Plaintiffs' back pain is so server sometimes in the morning were he could barely walk, even with the back brace tightly around him, the pain is still inscrewciating, and without the brace it's imposible to take a step without it feeling as if a pitch fork is being shoved in plaintiffs' back. To insure penological enterest of security of the institution, all officers including the defendants have performed a pat search on the plaintiff since 2007, including the defendants officer Ms. Djanah McCollough and sergeant Mr. Pedro Maribel, these actions tht have been performed against plaintiff, denying access to insulin care, medication lines to receive medications for server nerver pain radiating down his legs, nerve pain shooting up plaintiffs' head and down both his arms, can only be viewed as retaliation for exercising his rights to file grievances and law suit to this Honorable Court, which violates plaintiffs' 1st, 8th and 14th United States Constitutional Rights.

26. The defendants, Mr. Sergeant Pedro Mirabel on the morning of May 13, 2017 at approximately 6;30am was escorting plaintiffs' housing unit inmates to insulin care, and plaintiff could barely walk due to server pain in his back shooting down his legs, sergeant Pedro Maribel put his arms under plaintiffs' and assisted plaintiff walking to the prison hospital for his insulin treatment and he did not force plaintiff to go through any metal detectors.

27. Plaintiffs' laboured movements to walk were plinly obvious to see plaintiffs' difficulties and stress trying to walk, but was ignored by these defendants.

28. The morning of 4-27-17 Sgt. Pedro Mirabel, here and after (Sgt. Mirabel), was escorting plaintiff and others to our insulin treatment, the officer posted on our front door was officer Ms. Djanah McCollough, here and after (officer Ms. McCollough) who was not at her appointed post, (C-housing unit door), officer McCollough was at B-door housing unit talking with another female officer, and Sgt. Mirabel performed the pat search on plaintiff that has been performed on plaintiff since 2007. Actions against plaintiff on 4-27-17 precipitated plaintiff to file a request for ADA Accommodation DC-ADM 006 to be pat search because of his back brace; discused infra, and see exhibit A1.

29. Escorted by Sgt. Mirabel, we proceded up the hallway, we came to the security gate metal detector and he watched plaintiff walk through, and not hear the detector sound off. He asked how come I can clear this detector and not the detector at C-block housing door? Plaintiff began to explain to Sgt. Mirabel that, "some detectors clear me and some don't" his response was, "we will have to do something about that".

4.

30. Upon my return from getting my insulin treatment, and proceeded to go on my housing unit, officer Ms. McCollough informed me that Sgt. Mirabell said that I will have to take all the items out my persons and go through the detector, I do so and could not clear it, and was patted and sent on the block.

31. At around 8:15am on 4-27-18 I proceeded to go off the block to attend school, and officer Ms. McCollough watch me pass through the detector attempting to clear it, I ask this officer to please pat search me like she always have, her reply was "NO!, you clear it once you can do it again". I stated that some detectors clear me and some do not, her reply was that, "you are not going no were until you clear this detector.

32. Although I passed through the detector a couple times and it went off, I was not searched for any contraband, so this show that on the part of officer McCollough that her actions are not premised security reasons.

33. Plaintiff went into the unit managers office, Ms. Oliveri, here-and-after Ms. Oliveri, to inform her of my problem with getting to school. The unit manager who has the status of a captin, came to the door and ask the officer what is the problem. Officer Ms. McCollough said he still not going no were until he clears the detector.

34. The unit manager returned to her office and called the unit Sgt, Mr. Mirabell. Upon him arriving in the office he called the medical department to confirm my medical issues. After speaking to a medical personal, it was confirmed that I have surgical hard wear in my body. Sgt. Mirabell asked if plaintiff could be provided with a pass so that plaintiff would not have this problem in the future, see exhibit-F.

35. Sgt. Mirabel state after he got off the phone in the unit managers of Ms. Oliveri, that we are (Plaintiff and sgt Mirabell) are going to go out to the metal detector and plaintiff is to attempt to clear the detector, and if plaintiff can not, the officer will proceed to pat search the plaintiff.

36. Upon attempting to clear the detector three times, Sgt. Mirabell motion me to him with a wave of his had to pat search me, officer McCollough the door officer intervened and stated "No! he clear it once he can again, and then Sgt. Mirabell asked me to take off all my items, I responded that you want to humiliate me out here by undressing me to my bare chest, I am not going to allow you to degrade and humiliate me because of some under pinning reason of this officer Ms. McCollough who have been pat seraching me over two years, I was then given a direct order by Sgt. Mirabell to go back on the block, I was prevented from going to school.

37. Plaintiff believes it is very relevant to continue to point out that after the actions of § 37, of plaintiff continuing to set the detector off trying to clear it, plaintiff was never searched upon being sent back on the block, showing clear intentions that does not premise on it being a security issue, its personal, and therefore the defendants can not rely on penalogical interest in an attempt to escape their deliberate indifference to my serious medical needs, and not assure that I received my medication within the prescribed time.

38. On April 27, 2017 this extreme problematic issue of being denied to leave my housing unit to receive insulin treatment when I really need the treatment as a result of Officer McCollough and Sgt. Mirabells actions. Even when these officers are not assigned to my housing unit for duty for the day, these officers come from other block and tell the officer on my housing unit door to treat me in a certain way. Targeting me and discriminating against me because these officers perform the pat down search on other inmates except for me.

39. Officer Ms. McCollough and Sgt. Mirabelle acted in concert refusing to pat search me when I could not clear the metal detector because of my prescribed back brace that I have to wear in order to relieve my server pain that becomes very debilitating to walk on specified day especially when bad weather is upon us, because of the two six inch rods and six screws in my back, these officers gave me a direct order to go back to my cell.

40. Again on April 27, 2017 I have to leave the cell block at 11;00-11;20am when they call afternoon medication-line for my pain management medication for my chronic pain especially nerve pain from double crushed nerve in my neck, in which cause pain to shoot up across my head and feels as if someone is pushing an ice pick in my head, and nerve pain running down my arms and legs.

41. Officer Ms. McCollough immediately approached me and told me that "nothing has changed since the insulin line at 6;30am, I am not going to pat search you and if you can't clear c-blocks metal detector, like I saw you clearing some of the other metal detectors, then you are not going to medication line, your going back on the block".

42. As I was about to enter the c-block housing unit, it just so happened that the SCI-Graterford Superintendent was on the unit. I approached the superintendent Ms. Cynthia Link, (Super. Ms. Link here and after),and ask if I could speak to her. She agreed to listen to my problem, and everything I relayed about my interaction with the door officer Ms. McCollough, and Sgt. Mr. Mirabelle refusing to pat search me when I could not clear the metal detector.

43. Prohibiting me from getting my pain management medication, and that for over two (2) yers I have been patted down by these two officers and then allowed to go on to my destination.

44. Superintendent Super. Ms. Link asked me to step inside the door as she speak's to her officer Ms. McCollough. The Super. Ms. Link spoke with officer Ms. McCollough, then I was summoned to the outside of the housing unit by the Super. Ms. Link, Ms. Link began to explain to me that, " you are to attempt to clear the detector a couple of times, and if your not able to clear the detector, the officer will perform a pat search upon you". I responded by stating that I attempted to clear the detector three times, and officer Ms. McCollough still refuses to perform a pat search on me that she has performed on me over one hundred time.

45. Officer Ms. McCollough immediately jumped in and stated that "I cleared the detector once before then he could again". I then tried to explain that some of the detectors clears me and some don't, at that time the Super. Ms. Link stated, "Oh, where not going to have this", once again I tried to explain, Super. Ms. Link said "I am given you an direct order to go back on the block".

**46.** On April 27, 2017 without consideration for my medical needs and condition of being in server pain, or trying to ensure that I receive my afternoon pain management medications, Super. Ms. Link just looked at me.

**47.** Throughout the grievance process of grievance #676998, I received responses that were designed to fit the defendants with excuses for evading their targeting; retaliation; blaten refusal to follow security policy which provides an adequate alternative which is a pat search procedure; the refusal to use such alternative measures to assure that I receive my needed insulin care and medications from the medication lines for server verve pin, I was prevented the minimal measure of competence of medical care, which is deliberate indifference to my serious medical needs.

**48.** In the **Initial review response**, by Lt. T. McGrier, he acknowledges that officer Ms. McCollough and the super. Ms. Link, did not pat search me when I could not clear the metal detector, That I did not receive me scheduled afternoon medication, and I received a blue medical pass to assist me clearing the metal detectors at a later date, however it was useless as staff ignored the blue medical pass, so nothing was resolved, see exhibit-B.

**49.** In the **FACILITY MANAGER'S APPEL RESPONSE**, by Super. Ms. Link, she never references to her involvement in (1):; refusing to pat search me after I attempted to clear the metal detector, it went off three (3) times as I attempted to clear it; (2): sent me back on the block refusing to allow me to go get my medical care for server nerve pain, this rather than direct her officer Ms. McCollough to perform a pat search on me; (3): interfered and denied me getting my afternoon medications, see exhibit-B.

**50.** I filed an appeal for final review, and the secretary's office issued a **REMAND** of the grievance which was answered on November 3, 2017 by Super. Ms. Link.

**51.** Super. Ms. Link, **ANSWERED THE REMAND** on 11-3-17. By filing a second (2nd) initial review response and stating, among other things, "...you allege that on 04/27/17, you were denied your medication because you were unble to clear the successfully clear the metal detectors."No! I was denied my medications because Super. Ms. Link and officer Ms. McCollough would not follow policies and pat-search me, but instead ordered me to return on my housing unit.

**52.** Super. Ms. Links state in her second level appeal response to grievance #676998,**"while you should not have been denied your medication"** Since super. Ms. Link is the person who ordered me to return to my housing unit without pat searching me and then allowing me to proceed to get my pain medications, as they have been doing for years, more important, the super. Ms. Link validates my claims against the defendants of the violation of my 8th and 14th Amendment Rights of the United States Constitution, validating the deliberate indifference to my serious medical needs.

**53.** Super. Ms. Link attempts to shift the burden of responsibility for not being pat searched by stating, "...you will not be permitted to circumvent security procedures..."

54. Plaintiff tried to get officer Ms. McCollough and the super. Ms. Link to follow the "security procedures" by proceeding to the second step when one can not clear the metal detector and a pat search to be issued for the integrity of security!

55. Finally supra. Ms. Link tries to escape her failure to follow security procedures, that raised into her acts of deliberate indifference when she states; " **However, records indicate you were issued your prescibed neurotin on the morning of April 27, 2017**", This is unacceptable, the physician prescribed that I take this medication "neurotin" three (3) times daily each day in order for it to be effective on my server pain damage of double crushed nerves in my neck.

56. The most glaringly bold attempt to shift the failure to pat-search me is set out in the third from the last § of super. Ms. Link's remand answer were she state's, "**you have been witnessed confronting staff in an agressive manner. As such you present a security concern and pat searching is not appropriate**", see exhibit-B

57. (1)-If plaintiff is a security concern I should not be allowed to be amongst population roaming free, and plaintiff's accused interaction with staff is defined in writing in department of corrections as misconduct that precipitates discipline, but none was taking for these alleged aggressive confrontations of plaintiff toward correctional officers, in which plaintiff requested video proof from security cameras positioned everyplace in the institution.

58. Further, plaintiff is being discriminated against, where, other wity metal in their bodies, prothesis, as well as back braces, leg braces who are not made to remove them, but I am subjected to a different application of procedures, this is discrimination, a violation of the Americans with Disabilities ct, 42 U.S.C. § 12211(a), by virtue of his diabetic and back conditions , as well, the Rehabilitation Act, 29 U.S.C. § 794 by virtue of my diabetic and back conditions.

59. On April 30, 2017 upon reaching the front of my housing unit (C-block) to leave for insulin treatment at 6;30am I immediately noticed that officer Ms. McCollough was not on the unit door post, the officer was officer Mr. D.J. Siefies who pat searched me and allowed me to proceed to getting my insulin care. I noticed that officer McCollough was posted at D-blocks housing unit door.

60. Upon returning to my housing unit from my insulin treatment, as I was walking down the corridor I noticed officer McCollough leaving her post on D-block and quickly approaching my direction, officer McCollough stoped at my housing unit door of C-block and speaking to my housing unit door officer and then going back to her post at D-block.

61. Once I reached my housing unit, officer Mr. D.J. Siefies, I was told by officer Mr. D.J. Siefies that "officers came to me and directed me to perform certain functions upon you, but I'm not going to do that, I know how much pain you are in, I'm not going to make you take your back brace off knowing how you have these medical problems.", officer D.J. Siefies pat searched me and allowed me to go on my housing unit. I asked officer D.J. Siefies who these officers were, he simply said the Sgt. and another officer.

62. Upon getting on my housing unit I asked the C-block Sgt. if he directed the door officer Mr. D.J. Siefies to perform certain functions upon me, this Sgt. Stated no. For this Honorable courts information. Each housing unit from A-E has their own specific Sergeant that runs the running of his block, as well each unit block A-E has their own door officer regulating who goes on and off the unit.

63. Upon returning to the front of my housing unit C-block to go to afternoon medication, I stated to officer D.J. Siefies that my block sergeabt said that he did not give you such orders. Officer D.J. Siefies informed me that it was not my block officer, it was Sergeant Mr. Mirabell who is the sergeant on D-block, I asked who was the other officer who directed you to perform those actions, officer informed me that it was officer McCollough who was posted on D-block door post.

64. On April 30, 2017 I filed a grievance upon these to officers, Ms. McCollough and officer Sgt. Mr. Mirabell for targeting me and trying to get other officers to harass me about my medical condition, and that they were acting out of their appointed duties by interfering in my medical care.

65. The grievance was givnen the official tracking number #676016 which was assigned to Lt. T. McGrier for resolution. Lt. McGrier stated in his initial grievance response that, "That was a trainee and did not know that all inmates must clear the metal detector before entering or exiting housing units. The officers also consulted with the officer that an inmate may also be pat searched but that is at the discretion of the officer not the necessarily the request of said inmate."

66. This being the case that officers have the discretion to use security policies of a pat search for inmates who can not clear the metal detector, then these officers used their sound discretion to deny me my access to get off the block to go to my insulin treatment and medication lines and school, simply because they did not want to exercise a simple pat search, but yet, inform this trainee who has patted me down many times when he was posted on C-blocks housing unit. This officer has passed the procedural security part of his training or he would not has been assigned to doors with security metal detectors. This is a fable attempt to escape targeting and discrimination on the part of officer Ms. McCollough and Sgt. Mirabel, which is a violation of plaintiffs 8th and 14th Constitutional Amendments to the Unite States.

67. On May 1, 2017 at approximately 6;30am Sergeant Worth, (here after Sgt. Worth), was escorting my housing unit C-block to insulin treatment and the regular door officer was not posted on the door today, I was pat searched and allowed to proceed to insulin treatment. I asked Sgt. Worth to be a witness for me, he responded saying, "to what", I said I am going to walk through every metal detector starting at C-block. I walked through C-B housing unit detectors and they sounded off, I went through A-and the security gate and the detectors did not go off, the security cameras can attest to these activities.

68. On May 4, 2017, I was being escorted by Sgt.Worth to insulin line with the rest of the diabetics on my housing unit at approximately 6;30am, as I attempted to clear the detector and could not, officer McCollough gave me a direct order to go back on the block,Sgt. Worth tried to

officer that he witnessed me walk through four metal detectors from (C) housing unit too the security gate, and some detectors cleared him and some did not, it is his back brace. Officer Ms. McCollough disregarded her superior officer, and then stated, "per superintendent Ms. Cynthia Link, (here and after Ms. Link). There were four diabetic patients ptesent at the time of this incident and have provided affidavits in support of the actions inflicted upon me this morning by officer McCollough, please see exhibits-N,N1,N2,N3. This officer also prevanted prevented me from going to the medication line to get my much needed medication for my back and server nerve damage in my neck as well as my psychiatric medication for depression and PTSD. Officer McCollough would not even allow officer Greaves who was standing there with her in conversation pat search me so that I could go to insulin care.

**69.** Officer Ms. McCollough knows that I need to go to get my isulin aand other pain management medication, by sending me back on the block, she is violating my 8th Amendment rights.

**70.** In Lt. McGrier's **INITIAL GRIEVANCE RESPONSE** which was issued on June 2, 2017, is so confusing, or intentionally misleading that I do not know how he had the moxi to send me such a response or allow it to become apart of the record.

**71.** Lt. McGrier trys to brush off the harassment brought upon me by Officer Ms. McCollough by using the false statement that superintendent Ms. Link involved herself with "prior interactions" between officer Ms. McCollough and myself, when superintendent Ms. Link committed the identical acts of deliberate indifference, 8th and 14th Amendment violations and refused to have me pat searched before she refused me getting my medications for pain management when she sent me back on the block. So Ms. Link's "interactions" were only to join officer Ms. McCollough's harassment.

**72.** Lt. McGrier's **INITIAL REVIEW RESPONSE (exhibit-D** was written on June 2, 2017, my grievance #676985 was drafted on May 6, 2017, where I state in my grievance that although I obtained a medical blue pass from the medical providers, it was never once honored by officer Ms. McCollough, nor sergeant Mr. Mirabel, therefore making the medical pass useless.

**73.** Irregurdless,Lt. McGrier stated in his **INITIAL REVIEW RESPONSE** he unbelievably states,..."Therefore with your acquisition of your medical pass given on 4-25-17 this matter is considered resolved. You may use this pass and if you should have any problems please refer to the zone Lt. (McGrier). Plaintiff followed these instructions by Lt. McGrier, but the officers Ms. McCollough and Sgt. Mirabel will not follow the medical pass, this is interference in medical treatment in deliberate Indifference in violation in my 8th and 14th United States Constitutional Amendments.

**74.** I filed a second level appeal to superintendent Ms. Link, and her answer in her **"FACILITY MANAGER'S APPEAL RESPONSE"** is repete with sophism, and shallow attempts to shift the burden of knowledge of my serious back trouble on to my housing unit officers, when in fact, superintendent Ms. Link has always been appraised of my back surgery, spinalstenosis where two rods and six crews and four fused disc, and the trouble I have at so many times to walk without the use of the support of my chronic back issues, and knows that it is critical for me to have my brace on to relieve server pain.

75. Superintendent goes on to state in her appel response # 676985 that, " The housing officers should have been informed of your current medical pass and this should have prevented any issues. Therefore, **I DO APOLOGIZE for any confusion.**"

76. The irony of this response is that it mimics Lt. McGrier's weak response, further, still on April 27, 2017 superintendent Ms. Link and officer Ms. MCollough would not honor my blue medical pass or provide me access to the medication line at 11;15am, for my needed pain management medications for my server pain, and ordered me back on my housing unit, see exhibit-B were the superintend states, " medical staff would not provide passes to bypass metal detectors in lie of pat searches. This would present a security concern. Additionally, they have no record of any such pass issued to you", see exhibit-#676987-attached, #exhibit-D-attached and exhibit-E-attached. This refutes the superintendents ascertion.

77. The superintendent continues to claim that I am trying to circumvent security, I never tried to create any measures to escape any security procedures; the whole premise of this civil action is based of the officers not providing a security procedure that they have to handle inmates as myself, those who have prothesis, and bullets in their body, and that is to pat search, and a pat search is more a security safety measure that is more efficient than walking through a metal detector, becaue you can not hide anything that will not create the detector to sound off, therefore, superintendents claims of me trying to escape security measures are unfounded.

78. The final review also fell on death ears, although I clearly presented valid counts of deliberate indifference to my medical care at the highest level, (superintendent), and clear 8th Amendment violations, I can not get a fundamental fair review in this agency.

79. On May 5, 2017, only days after the April 27, 2017 incident that occurred between officer McCollough and Sgt. Mirabel at 6;30am, I proceeded to the front of my housing unit with the rest of the diabetics on my housing unit to await our escort to insulin care.

80. Sgt. mirabel approached to escort us, the diabetics were attempting to go out the door and Sgt. Mirabel shouted "stop!, Don't no one leave the block", Sgt. Mirabel the got to the front door and called me to the door and took me to the metal detector, he stood on one side with his arms folded and standing in an intimadating stance and stated to me, "go through the detector", I attempted three times to clear the detector and could not, Sgt. Mirabel then stated, "now go back on the block and file your grievance, that's per the superintendent" (Ms. Link). There was four diabetic patience who provide affidavits in support of my claim of the actions of Sgt. Mirabel against me, see exhibits-N,N2,N3,N4.

81. I went and filed a grievance that was given the tracking number #676975. Lt. McGrier responded to my grievance on June 1, 2017 stating, "...it was noted that you and the above officers had prior interactions about the same matter 10 days prior to this intervention and therefore with your acquisition of your medical pass given on 4-25-17 (this is a mistake-the medical pass was issued to me on 4-27-17), this matter is considered resolved. You may use this pass and if you should have any problems please refer to the zone Lt. for assistance" see exhibit-F and

the initial response.

82. The medical pass afforded me no relief from these two officers neither did requesting to see a zone Lt. These arrogant officers said that they did not care about my pass. Through the grievance process I wrote a detailed letter of request and help to the medical director Dr. Stephen Weiner,DO, informing him of my problematic serious issue, and I got no response to my pleads to him see exhibit-F grievance process #676975.

83. On May 6, 2017 I had to file a grievance on a Doctor Duval for a conversation that a medical personal had with my unit manager Ms.Olivier on May 5, 2017 in which I was present, in which the medical personal stated that Dr. Duval said that I could take my brace off and walk through the medical detector. This grievance premised on the facts that I was never examined by Dr. Duval to ascertain my pain level with or without my back brace on, and making a medical decision over the phone without an examination is deliberate indifference to my serious medical needs.

84. This grievance was assigned the tracking #677003 and assigned to the Mr. Korszniak (CHCA) for resolution. Mr. Korszniak, (CHCA) stated in his initial response that, "Dr. Duval does not work for the DOC and she is a psychiatrist. I cannot comment on any decision she has made. Your complaint seems to focus on the metal detectors and your brace. That is a security issue and the security policy is very clear as to how these situations are to be handled", see exhibit-G initial grievance response

85. On May 31, 2017 I filed an appeal to the superintendent Ms. Link. On June 30, 2017 superintendent Ms. Link issued her second level appeal response stating that, "In your initial response, you stated Dr, Duval does not work for the DOC and she is a psychiatrist. Although she is a psychiatrist, the Correctional Health Care Administrator oversee that Department and therefore can address the grievance regarding the alleged directives given by Dr. Duval, specifically if Dr. Duval spoke with a nurse in the medical department and gave such directives. Please provide a revised grievance response" see exhibit-G REMAND GRIEVANCE-NOTICE TO GRIEVANCE OFFICER (Mr. Korszniak, (CHCA).

86. On 8-22-17 Mr. Korszniak, (CHCA) issued his remand response stating that, "I have reviewed the written documents in the record and I can find no evidence that Dr. Duval gave any written or verbal directions to anyone regarding Mr. Dews and his brace. There are no notes to indicate that any nurse had any conversation with DR. Duval regarding this issue and there is no order written with regard to this issue", see exhibit-G remand response from Mr. Korszniak, (CHCA).

87. On August 31, 2017 I filed my second level appeal to superintendent Ms. Link along with an inmate request slip to my unit manager concerning Mr. Korszniak's (CHCA) remand response of no records existing of the conversation that Ms. A. Olivieri my unit manager had with a medical staff member on May 5, 2017 dated 8-30-17, where Ms. A. Olivieri confirms that she spoke to someone from the medical department and was given those directives and told that they were from Dr. Duval. See exhibit-G and it's attached exhibit-A.

88. On October 26, 2017 I received superintendent's second level appeal to grievance#677003 were she states that, "Mr. Korszniak, (CHCA) was not present and could not speak as to what staff were told. Dr. Duval

is a doctor, as well as a contract employee, and he would have no authority to contradict what she may have told staff...It is not clear whom unit manager Ms. Olivieri spoke to when she contacted the medical department. That person did tell her that they'd spoken to Dr. Duval. However, in contacting Dr. Duval, she reported that she did not, in fact, speak to anyone on the phone or otherwise about this matter." see exhibit-G facility manager's appeal response.

89. Despite the serve pain I was experiencing, I tried to obey such orders that were relayed to me from Dr. Duval, and on May 6, 2017 I attempted to walk through the metal detector without my back brace on and had to grab the shelf next to the detector because of the server pain shooting down my legs and my legs buckling as they gave out on me, officer A.L. Derstine was the posted door officer and I asked her did she see that and could I use her as a witness to those facts and she gave me her name and said yes.

90. Despite the fable attempt to conceal who unit manager Ms. A. Olivieri spoke to at the medical department, my presence at any stationed area were the phone is answered, it is always answered in this fashion; (hello dispensary so and so speaking- hello unit manager's office so and so speaking), therefore there is no doubt that the identity of the person in the medical department is well none, but it is being covered up to protect that individual.

91. On May 8, 2017 I went to sick call seeking medical help for this serious medical denial. I was seen by Ms. Jean Defrangesco-CRNP-(Certified Registered Nurse Practitioner), I explained that I am being denied to come off the housing unit in the mornings because of my back brace that I can not remove because of the server pain so early in the morning. I explained that there are factors that cause me to not be able to walk without server pain in the morning. (1)-My PTSD, were I have very bad nightmares that cause me to awaken in forceful cantortions that effect the rods in my back; (2)-The weather, certain days is so unbarabie, and walking with the brace is painful, and without the support from the tightness of the brace I can not take a step.

92. Plaintiff was told by Nurse Ms. Jean Defrangesco, that this is a security issue, and can't do nothing for me; but she stated, "I'll E-mail Mr. Joseph C. Korszniak, (CHCA) Correctional Health Care Administrator that you are having a problem getting off the housing unit for insulin in the morning, see exhibit-M.

93. Although nurse Ms. Jean Defrangesgo, (CRNP) states that the issue with my back brace is a security problem and that she will E-mail the medical administrator Mr. Joseph C. Korsnizk, (Mr. Korszniak (CHCA) here and after), about the problem, Mr. Korszniak (CHCA) stated in one of my grievance responses #679006 that, " You state in your grievance that we are negligent in doing our job because security makes you take your back brace off. I think this grievance is misguided. There are clear and precise policies in place for security with regard to searches and the metal detector. The medical department cannot direct security and tell them how to do their jobs", see exhibit-f, Mr.Korszniak's initial grievance response.

13.

94. Then you have Lt. McGrier, the grievance officer stating that, "An inmate may also be pat searched but that is at the discretion of the officer..." also he states, "A medical pass for exemption must be obtained through the medical dept.Administration". see exhibit-C, Lt. McGrier's initial grievance response #676016. So, both department that are involved in the concerns here are pointing the finger at each other for resolution to the denial of access to my insulin care.

95. Plaintiff is more in agreement with Lt. McGrier, that it is the medical department who has to issue the medical pass to inform security of my medical conditions, and the medical department could request to security that based on plaintiff injuries, could pat searches be performed upon him as too making plaintiff take off his back brace on days that it is to painful for him to perform and walk without the support of the back brace.

96. On May 11, 2017 I had to file another grievance on officer Ms. McCollough for refusing to allow me to continue being escorted off my housing unit by Sgt. Worth to the dispensary to get my insulin care. This officer sent me back on the block saying that I can't go.

97. I argued within the body of the grievance that was assigned tracking #678507 that this officers attack upon me has nothing to do with it being a security concern for her, based on the facts that as I attempted many times to clear the detector, I cause the detector to sound off, and never once have I been searched as a result of the detector sounding off, just sent back on the block. I argued that if officer McCollough is just going to send me back on the block after I set the detector off, then this officer just as well should allow me to go get my insulin without her pat searching me.

98. It is a security breach to allow me to set the detector off as I attempt to clear it and not be searched, just sent back on the block and being denied access to my insulin care, this officers actions speak for themselves as far as the denial to go to insulin care is because I can not clear the metal detector because of my back brace, but yet, I'm never searched when I set the detector off as a result of attempting to clear the detector.

99. That afternoon around 2;15pm officer B.A. Muhamaad was posted on my housing unit door (C-block) and as I wet to attempt to clear the metal detector it did not sound off, I asked him if he seen that and you stated, "yes", and I asked him could I use him as a witness and he stated, "yes".

100. This officers discretion not to search me when I did set the detector off is a plain indication that it is something personal as to why she have all of a sudden after years of being pat search and many time by her, that now something exist that prevents her to pat search me.

101. This grievance was sent to Lt. T. McGrier for resolution, on June 21, 2017 he issued his response to this grievance #678507 stating that, "Mr. Dews your grievance states that OFC. McCollough harassed you and interfered with your daily insulin procedure again, upon interviewing the above officer was noted that Supt. Link had prior interactions about

the same matter....You must present the medical pass issued to you for the hardware that's implanted within your lumbar area but if your brace is the reason for your failure to pass the metal detector you may be asked to remove or open it at the officers request for inspection of contraband"

102. On May 17, 2017 I went to sick call and was seen by Dr.Albright and explained to her and pleaded for help to have medical contact the security department and verify my major injury issues with my back, and to inform her of the nerve pain that shoots down my legs. That in the morning my pain is so very server. I was told by Dr. Albright that "she could not do anything for me, it is a security issue, I'm sorry",

103. On June 7, 2017 I filed my second level appeal to superintendent Ms. Link grievance #678507, I argued that, I was never asked if I could stand stationary and had my back brace to the officer for inspection, and then the brace given back to me to replace as an alternative. Lt. McGrier moves off his statement in his grievance responce in grievance #678016 see exhibit-C.

104. As Lt. McGrier states in his grievance response to #678507 exhibit-H "...inspection for contraband...", this being the case, all my attempts to clear the detector were meet with the detector sounding off, but I was not searched just sent back on my housing unit without my insulin care. Therefore, I should have been searched for contraband because I set the detector off, but not once was I searched for contraband.

105. On 8-4-17 I received my second level appeal response from superintendent Ms. Link, in which she states that, "Mr. Dews, I have reviewed of your initial grievance, the initial response and your appeal. The housing officers should have been informed of your current medical pass and this should have prevented any issues..." This is an attempt to escape 8th and 14th Amendment violations of my rights, because the housing officers who escorted me and my unit to insulin new of my condition and my pass, it's just officer Ms. McCollough and the superintendent refused to honor my pass and my condition.

106. The superintendent goes on to state in her grievance response of #678507, "...Therefore, I DO APOLOGIZE FOR MY CONFUSION..." There was no confusion, it was plain and simple, I had the pass, the superintendent new about my condition when she acted in concert with officer Ms. McCollough when the two of them prevented me from going to get my afternoon medication for my server pain. This is another acknowledgement of deliberate indifference in violation of my 8th and 14th Unite States Constitutional civil rights.

107. The superintendent goes on to state that, "...However, although you are issued this pass, it does not omit you from any security searches" As plaintiff's pleadings throughout this complaint you can never once see were I asked to by pass any security searches, infact, I'm asking for the security searches to be applied upon me so that I could go to my insulin treatment, and was denied.

**108.** The superintendent goes on to say, "...After speaking with staff on your housing unit, it appears this problem has been resolved..." This is completely unfounded that it has been resolved, on 5-15-17 I had to file another grievance concerning this problematic serious medical issue, as well as 5-19-17 and 5-30-17 see exhibits I-J-K.

**109.** On May 26, 2017 I seen Lt. T. McGrier who was assigned to investigate the grievances and claims against these two officers Ms. McCollough and Sgt. Mirabel. Lt. T. McGrier was accompanied by an officer Mr. Greaves.

**110.** Officer Mr. Greaves was the reason for me stopping Lt. T. McGrier, because on May 4, 2017 when officer Ms. McCollough refused to allow Sergeant Worth to escort me to insulin when he was trying to explain to officer McCollough about the problems with the detectors, officer Mr. Greaves was present accompanying officer McCollough, so I ask if officer Mr.Greaves could pat search me, officer Mr. Greaves was proceeding to begin a pat search on me and officer Ms. McCollough stopped him saying, "No, he's not doing nothing".

**111.** I asked officer Mr. Greaves in front of Lt. McGrier if he remembered and he said, "yes, but even so that it was nothing, no big deal", I in response said that it is something when I'm being prevented from getting my insulin care so out right and obvious by only these two officers Ms. McCollough and Sgt. Mirabel.

**112.** On May 15, 2017, I attempted to ajust my back brace, to the best of my ability accommodate the situation so that I could get my needed insulin treatment, and my pain management and mental health medications.

**113.** Since the only parts of the brace that makes the detector sound off is the rivets that holds the construction of the back brace in place.

**114.** At 11:10am on May 15, 2017, I taped folded cardboard over the brass rivets and went to the front of the block and asked officer Ms. McCollough if I could test the detector to see if it sounds off, this after I explained to her what I did to my brace to try and help the serious situation of clearing the metal detector.

**115.** After showing officer Ms. McCollough what alternatives I did by opening my shirt and showing her the card board, she allowed me to try and clear the metal detector.

**116.** I set the detector off all three times I walked through it, wherein, officer McCollough said, "well that did not work, so go back on the block, you are still not going to medication line Mr. Dews".

**117.** I have always used all of my effort to maintain my verbal responses to the staff involved in denying me my much needed medications, and after officer Ms. McCollough ordered me to return on the block, I extended my humility by begging her to allow me to continue on to medication line.

**118.** Wherein, I stated, "Ms. McCollough will you please let me go get my pain medication and my mental health medications, and could you please pat search me because I am in server and extreme pain right now! You should be able to see this, plus you know how long I have been going to daily insulin and medication lines."

119. Officer Ms. McCollough's only response was "No!, and I am going to keep saying No! Nothing has made me change my mind"..."so go back on the block.

120. I went back on my housing unit without being pat searched, or her calling the security team to investigate what item that is on my possessing that activates the metal detectors to go off, wherein, it can be accepted that officer McCollough knew the back brace is the cause.

121. This can also be assumed that, because of the proper character that I display on the regular basis, and those who I interact with, that I would not be caring anything that is a violation to the Department Of Correction behavior/conduct rules and polices.

122. I state in my inmate grievance #678622 that officer McCollough's actions rise to the level of "intentional wanton infliction of pain and suffering that is unnecessary, and deliberate indifference to my serious medical needs, see pg.#2 of initial inmate grievance #678622 exhibit-I.

123. I again reported to the administration my different painful condition, and that officer McCollough and Sgt Mirabel's action are intentionally causing additional and extendened pain and suffering, brings these two officers actions to a violation of the 8th Amendment through deliberate indifference.

124. I sought additional help through my family, wherein, my niece Ms. Lorraine Durham made a number of telephone calls to Graterford, Central Office and Harrisburg dating the events that have been happening to me by these tow officers, Ms. McCollough and Sgt. Mirabel preventing me from receiving my seriously needed medications at the different times they are to be taken, 6:30am, 8:00am and 11:00am.

125. My niece made personal telephone calls to the Graterford Superintendent Ms. Cynthis Link, and after explaining my problem to her she stated that she would personally look into exactly why I was not getting my prescribed medications, and stated that, "he should not be denied his medications and it will stop."

126. My niece Ms. Lorrian Durham extended her diligence by making telephone calls to Central Office and was directed to a Mr. Jeff Reuschen in Harrisburg Pa. Mr. Jeff Reuschen stated that he would call Graterford and find out why the two officers, McCollough and Mirabel were causing me to be denied access to my medical treatment that is for serious medical issues.

127. After the call with Mr. Jeff Reuschen, the denial of medical treatment was continuing, so my neice called Harrisburg, she spoke to an administrator in charge of the medical department at Graterford, after explaining to her that I was being denied access off the block for my serious medications that included insulin. This personal stated, "I am going to Graterford tomorrow and will look into this serious problem.

128. This personal also stated, "why is not the medical department assuring that I get my medical care if the officers are doing this? see telephone records exhibit-F's attachment exhibit-D.

129.    Plaintiff has consistently been denied a particular element of security procedures, (pat search) that are consistently provided to other inmates in my situation who have back and leg braces, and prosthetics and bullet's in their body, but I am treated as if this policy does not exist if you can not clear the metal detector.

130.    On 1-2-18 Central office issued their final response to grievance #676975 exhibit-F were Ms. Dorina Varner chief grievance officer states, that, "...Contact with the institution [Graterford] found that if the metal detector can't be cleared, pat searches are conducted..."

131.    On May 19, 2017 I had to file another grievance upon the medical department here at Graterford for failure to interven in a medical situation were they had complete standing as my lassions who care for me and have every peace of medical information pertaining to my surgery and that pain and suffering that I experience each day, as supported by the pain medication for pain management.

132.    This grievance was given the tracking number #679006. This grievance premissed off of an incident on May 17, 2017 when plaintiff went to sick call to see a medical provider for help, not to direct security how to do their job, but simply ask security could the pat search procedures be applied to me because of the major problems I have concerning my back and the major surgery of back reconstruction. I was told by the medical staff that it's a security issue and that they could not help me.

133.    Plaintiff informed the medical department of the pain that shoots down my legs, and the feeling of pain as a pitch fork is being shoved up my backside, debilitating me as each step I try and take. I went as far as to send a copy of an x-ray Of my back from 9-30-17 that shows that one of the screw inserted in my back has fractured in two, but yet, through these ten grievance and numerous visits to inmate sick call, no doctor order an x-ray to see if my complaints had any substantial argument. see exhibit-J the attachment exhibit-A.

134.    On May 24, 2017 My Korszniak, (CHCA) issues his initial grievance response to grievance #679006, were he states, " You state in your grievance that we are negligent in doing our job because security makes you take off your brace..." In his statement he fails to realize that the only way that security knows of my injuries is that the medical department informing them of such injuries to any inmate, other wise, the inmates who wear back braces just to exercise would not be differentiated from those who have medical injuries. This is why the medical department has to inform securities of those inmates the have medical injuries. Just as Lt. T. McGrier states in his grievance response to grievance #676016 that, A medical pass for exemption must be obtained through the medical dept. Administration, see exhibit-B initial grievance response.

135.    Mr. Korszniak, (CHCA) continues his argument that I must deal with security, but as this Honorable Court can see by ¶ 134, were security plainly states I must have the medical department intervene with the proper paperwork, this is a testament of the deliberate indifference of my serious medical needs by the correctional Health care administrator Mr. Korszniak, (CHCA).

136. On June 9, 2017 I filed my appeal to the superintendent arguing the facts of the Department Of Corrections medical polices that state in part, I stated, ' VIII medical services DC-ADM 820 (Department Of Corrections administrative Directive-820)-(A) Accommodations for inmates with disabilities DC-ADM 006 as well as (B) medical Service (DC-ADM 802-(2) Access to medical services A-B,, Therefore, Mr Korszniak's grievance response is evading the DOC medical procedures for inmates with disabilities..."

137. On July 5, 2017 superintendent Ms. Link responded to my second level appeal to grievance #678006 stating that, " Mr. Dews, I have reviewed your appeal, the initial grievance response and your initial grievance. The assigned grievance officer [Mr. Korszniak, (CHCA)] appropriately responded to your initial grievance. I encourage you to continue to work with our medical staff as well as outside providers, have an open dialogue and ask questions about any medical issues you may have. I am not qualified to dictate or overrule decisions made3 by trained  medical professionals."

138. First, the superintendent did overrule the decisions when she refused to allow me to go to doctor ordered medication lines for prescribed pain management medication, see exhibit-B against the superintendent, second, she directs me to have an open dialogue with medical staff. Through many visits to inmate sick call seeking help from medical providers, trying to have and open dialogue, but the medical department is refusing to have and open dialogue with me, and denying me their medical help, as indicated by Lt. T. McGrier in his grievance response, see exhibit-B initial grievance response. Therefore superintendents response is fruitless of intervention to my dial of medical care which is deliberate indifference to my serious medical needs.

139. The superintendent was directed by the secretary's office of grievance and appeals to produce a remanded grievance response to grievance. #678006 in which she states, "You provide an x-ray report from 2007 indicating that there is evidence that you have rods and screws in your vertebra..." This was not the premise of me providing the x-ray, the reason was to show the medical staff and the administration that things are screwed up in my back, first with the fractured screw that could be the cause of such pain and suffering, but this was glossed over, not even acknowledged.

140. The superintendent goes on to state, "The grievance officer, [Mr. Korszniak, (CHCA)] states that the medical staff would not provide any type of documentation that would allow you to bypass security procedures..." The superintendents response validates my deliberate indifference claim against the medical department and Mr. Korszniak, (CHCA) by violating the ADA, see ¶ 136. This is also discrimination were the Secretary's Office Ms. Dorina Varner the chief grievance officer states in her final grievance response to grievance #676975 that pat searches are conducted at this institution if you have reason that prevent you from clearing the metal detector, all other inmates in my situation are afforded the pat search procedure but I am excluded, see exhibit-F final appeal.

141. The superintendent reasoned as she states, "You have been witnessed confronting staff in an aggressive manner. As such, you present a security concern and pat searching is not appropriate..." The actions described herein, are infractions of institutional conduct rules, and assuredly would be followed up with disciplinary actions, that was not done in this case, and strict proof is requested by video footage of the institutional security camera technology at the institution.

142. Furthermore, if I am a security concern, why am I allowed to walk freely amongst the regular population and have social encounters with correctional officers everyday as I go to school, medical treatment and other activities without any security violations issued against me as my institutional misconduct will display, therefore, I am being discriminated against in retaliation of past law suits filed against this administration.

143. The superintendent goes on to state that, "you should not be denied your medication, however it is expected that you work with staff to ensure the safety and security of the institution..." Her admittance of my denial of medical care is deliberate indifference to my serious medical needs, and as this Honorable Court can see, I have tried and pleaded and begged this medical department and the institutional administration for help in order to ensure the safety of the institution. There is no better way of keeping security more safer than searching procedures, hands on is the best security measure to uncover contriban that may be carried by myself that the metal detectors can not pick up, therefore, my simple request to be pat searched prevents added extreme pain and suffering at certain times.

144. Plaintiff has numerous times explained to the medical department and the institutional administration, that in the mornings I am at my worst pain some times, and some times I just can not take a step without the tight support around my waist alleviating a significate amount of pain, and that pain may be due to the fractured screw in one of the rods fixtures in my back, and no doctor have ordered further evaluation by current x-rays to see if further damage is creating significant pain, and this is deliberate indifference to my serious medical needs in violation of my 8th and 14th Amendment rights of the United States.

145. On May 30, 2017 I filed another grievance upon Mr. Korszniak, (CHCA) for delay and denial of medical care and not following the basic known procedural precess in violation of my 8th and 14th Amendments, this grievance was assigned tracing number #680413.

146. I filed a grievance of Dr. Duval see exhibit-G #677003 who was identified as a psychiatrist, so the grievance was supposed to be sent to the mental health supervisor for resolution. But, he decided to disregard basic misdirected grievances. The grievance should have been sent back to the grievance coordinator and explained by Mr. Korszniak that this individual Dr. Duval is not under his authority department, but Mr. Korsniek, (CHCA) takes it upon himself to answer the grievance.

147. This delayed the resolution of this grievance that could have resulted in relief for the plaintiff, which would have prevented significate pain and suffering of wanton infliction of pain.

148. Mr. Korsniak, (CHCA) had well pre-existing information concerning plaintiff's denial of medical treatment by way of e-mail sent to him by Dr. Jean Defrangesco the day plaintiff went to sick call on May 8, 2017. Mr. Korszniak, (CHCA) conceals his authority of this situation stating in the grievance #677003 that, " Dr Duval does not work for the DOC and she is a psychiatrist. I cannot comment on any decision she ha made..." see exhibit-G initial grievance response.

149. All along he knew that Dr. Duval was under his authority, as stated by the superintendent Ms. Link, were she stated that, "...Although she [Dr. Duval] is a psychiatrist, the Correctional Health Care Administrator [Mr. Korszniak, (CHCA)],oversee that department and therefore can address the grievance regarding the alleged directives given by Dr. Duval...) see exhibit-G remand-Notice to grievance officer dated June 30, 2017.

150. This was intentional delay of medical treatment, as well as ignoring the e-mail sent to him on May 5, 2017, which if he would have addressed the attach of these officers refusing to exercise an element of security procedures that deal with medical infuries that created significant pain and suffering, he ignored and then denied providing me relief in reference to the Department Of Corrections medical policies of medical accommodations, refer to ¶ 136.

151. Mr. Korszniak, (CHCA) could have prevented many days of denial of my insulin and medication line pain medication, he was e-mailed about this intentional medical denial and wanton infliction of pain since May 8, 2017, intervening then could have prevented the filing of four additional grievant complaints of denial of medical treatment; grievance #678507 filed on May 11, 2017, #6788622 filed on May 15, 2017, #679006 filed on May 19, 2017 and #680413 filed on 5-30-17. This is deliberate indifference in violation of my 8th and 14th United States Constitutional Amendments.

152. On June 7, 2017 I went to sick call and was seen by Dr. Thomas, where I explained that I was having these denial access of the block because of my back brace, and that I was have server pain going down my legs and my feet, Dr. Thomas said that there is nothing she could do, see exhibit-O.

153. On June 12 I went to sick call again to get my pain medications renewed, I was seen by Dr. Thomas, she informed me that my A1c. was 10.9. see exhibit-P. Each visit to sick call trying to keep an open dialogue with the medical providers as directed by superintendent Ms. Link, but no relief was provided, I continued to be denied my medical treatment of insulin in the morning.

154. I have become very depressed and fearful to go to insulin in the morning, officers constantly bothers me about my medical injuries, my anxiety and patience are being tested. They have caused me not to go to insulin line in the morning when my back is to painful to be force to take off the only relief support that enables me to walk with pain to get my insulin and pain medications. Officers have create a fear in me to the point where I may act out as a result of the pain and suffering that they attempt to put me through by making me take of my back brace. I go in the morning when my back is capable of taking my brace off and walking through the detector, because of the attach on me, my back pain determines me going to insulin line in the morning.

155. Each of my nine grievances that I appealed to the chief grievance officer at the secretary's office sent me a notice stating that, "...Upon completion of this review, it is the determination of this office to solicit input from an appropriate Central Office Bureau relative to the issues raised in your grievance".

156. On March 6, 2018 I was summoned to the prison hospital to be seen by the medical director Dr. Stephen Weiner, Do. He informed me the a Dr Noel stationed in Harrisburg, who is the head of the medical department here at Graterford e-mailed him, (Dr. Stephen Weiner, Do) and told him to look into my back situation.

157. He claimed not to know about the serverity of my back issues, which is a lie, on July 5, 2017 I sent him a detailed letter explaining the issue with my back as well as the denial of my insulin and pain medication, see Exhibit-F attachment exhibit-B.

158. Dr. Stephen Weiner, Do, then states he is ordering an x-ray to find out if something is going on in my back that needs to be fixed. I told him after ten (10) months of grievances and complaining, no medical provider her requested to have an x-ray done on me to find that out.

159. On March 10, 2018 I had the x-ray and on March 20, 2018 I went to sick call to find out the results of the x-ray, I was seen by Dr. Mr. Joseph P. Walsh, PA-C, he informed me that the x-ray showed that I have now two fracture screws that have separated, scoliosis, and arthuritist in one of my hims. So the medical Director Dr. Stephen Weiner ordered and MRI and set up an appointment to see a neurologist.

160. On April 16, 2018 I was transported to Suburban Mercy Hospital and had the MRI.

161. Throughout this ten (10) month complaining about the significant back pain, at every level of my request for help and grievances, I have been repeatedly told at every level medical department, institution and chief grievance officer in Harrisburg as well as the Bureau of Health Care Services stated to me that " the medical care provided was reasonable and appropriate", this despite that there was no medical care provided, each time I sought medical attentions and help, I was told by two doctors that there is nothing we could do, Dr. Thomas and Dr. Albright.

162. On January 19, 2018 I wrote to the chief grievance officer a the secretary's office and requested a copy of the Bureau of Health Care Service recommendations of my complaint that the DOC refered to them for assistance, see January 19, 2018 attached to exhibit-K. I stated that I have a right to have for my records a copy of their written review response because it relates to my appeal to the secretary's office of inmate appeals.

163. I was denied the right to have a copy of the Bureau of Health Cares Services written report, which denies me the right to appeal their determinations without having a evaluation or examination of me to determine if such decisions that they made are appropriate, come to find out through the x-ray report of March 20, 2018 their decisions are wrong.

164. This office of grievance and appeals stated that, "..You are not

privy to the referred response that this office received from the Brureau
of Health Care Services" see exhibit-A attached request letter to
Assistant Chief Grievance officer Ms. Keri Moore dated January 19, 2018,
as well as her response from Secretary's office dated February 7, 2018.

### COUNT-I: VIOLATION OF 1st., 8th., AND 14TH., 42 U.S.C.
### § 1983 DENIAL OF MEDICAL CARE, DUE PROCESS AND RETALIATION
### AGAINST CORRECTIONAL OFFICER MS. DJANAH McCOLLOUGH

165. Mr. Dews hereby incorporates all prior paragraphs from ¶¶ 1-164
as if presented herein.

166. Defendant Ms. Djanah McCollough Correctional Officer at all
time acted under the color of state law.

167. Correctional offiver Ms. McCollough; violation of the 8th and
14th Amendments of the United States Constitution by acting with
deliberate indifference through a denial of plaintiffs' medical
treatment(s), along with a denial of procedural and Substantive Due
process in refusing to employ other acceptable means of security to
insure that plaintiff received his daily prescribed Insulin treatments
and pain management medications, and mental health medication.

168. Prior to April 27, 2017, plaintiff had a number of verbal
arguements with officer Ms. McCollough on a few occasions were plaintiff
tried to exit his housing unit, C-block at 8;00am for school and 11;00am
for medication line for pain medications and mental health medications
and officer Ms. McCollough was away from her post of C-block door.

169. After 3-5 minutes had past, and officer Ms. McCollough not
appearing from me knocking on the front door, I would start mildly
kicking on the door in an attempt to get officer McColloughs attention
that someone wanted to exit the housing unit.

170. This would cause an argument between plaintiff and officer Ms.
McCollough because she did not like to hear inmates keep knocking on the
door for her attention to get off the unit.

171. That for two years officer ms. McCollough has been pat
searching the plaintiff when he could not clear the metal detector she
was on post at, because she had knowledge of the plaintiffs' prior back
surgery, that plaintiff had two rods and six screws inserted into his
spine, and that plaintiff had to ware a back brace to support his spine.

172. That for two years officer Ms. McCollough knew that the
plaintiff is a diabetic and must attend his morning (6;30am) insulin
treatment, the officer Ms. McCollough knew that plaintiff attend
medication lines after insulin treatment and 11;00am to receive his pain
management and mental health medication.

173. That officer McCollough knows that she has three options when
she has a post that involves a metal detector or and the inmate can not
clear a metal detector, (1), have the inmate repeat attempting to clear
the metal detector, (2), perform a pat search on the inmate, (see-final

appeal response **exhibit-F, grievance #676975**) which states in part...
**"contact with the institution found that if the metal detector can't be cleared, pat down searches are conducted", (3)** contact the security office and they will conduct a strip search of the inmate.

175. However in the  interest of security, and penological interest, the inmate who can not clear the metal detector should **NEVER** be given a direct order to return to the location the inmate came from without further investigation **(id ¶ 173).**

176. Officer McCollough as a correctional officer working at Graterford State Institution for over two years allegedly contained all of the training and knowledged in ¶ 175, as such she was the proximate cause for the plaintiffs' being denied his **insulin** and **medication,** treatment on numerous occasions' and **mental health medication.**

177. Correctional officer Ms. McCollough had prior knowledge that the plaintiff has serve injuries to his back, wears a back brace, takes pain medication as well as being a diabetic taking insulin treatment. That she has personal knowledge that plaintiff travels to the dispensary (prison hospital) in the early AM.hours to receive insulin treatment, that officer Ms. McCollough has personal knowledge that these medical treatments are prescribed by a medical staff member of the medical department.

178. That the actions of officer Ms. McCollough, in denying the plaintiff access to receive his medical treatments presented reckless disregard for the risk that the plaintiff would incur pain and suffering, as well as the rick of serious bodily injury and possible death if he did not receive his insulin treatment with the AM. group of diabetics off of his housing unit.

179. Officer McCollough was thus deliberately indifferent to the plaintiffs serious medical needs by refusing to accommodate plaintiff in receiving his needed medication as she has in the past.

180. Officer McColloughs' deliberate indifference to plaintiffs' serious medical needs violated plaintiffs constitutional righs to adequate medical care.

181. Officer Ms. McColloughs' conduct exhibited a willful, wanton, malicious, and/or reckless disregard fror, or indifference to, plaintiffs constitutional rights.

182. As a direct proximate result if officer McColloughs' acts as set forth above, plaintiff sustained physicl injuries and psychological harm.

183. **Therein,** all of the above actions violated the cruel and unusual punishment clause of the 18th Amendment, and Violates the Substantive and Procedural Due process clause of the 14th Amendment.

184. **WHEREFORE:** Plaintiff respectfully request that This Court Award Him;

A. Compensatory damages in an amount to be determined at trial.

B. Punitive damages in the amount of $250.000.00, Two Hundrend and Fifty thousand dollars, according to proof which is fair, just and reasonable.

C. Attorney's fees and the cost of this action Pursuant to 42 U.S.C. §§ 1983, 1988 and 1997(d).

D. Such other and further relief as to which plaintiff may be justly entitled.

### COUNT-II VIOLATION OF THE 8TH and 14TH AMENDMENTS
### DENAIL OF ADEQUATE MEDICAL CARE AND DENIEL OF DUE PROCESS
### AGAINST CORRECTIONAL OFFICER SERGENT MR. PEDRO MIRABEL
### 42. U.S.C. § 1983

185. Mr. Dews hereby incorporates all prior paragraphs from ¶-¶ 1-165.

186. Defendant Sergeant Mr. Pedro Mirable at all times acted under the color of State Law.

187. Defendant Sgt. Mirable here and after, violated plaintiffs 1st, 8th and 14th Amendment rights of the United States Constitution, by acting with deliberate indifference through denial of plaintiffs' medical treatment(s), along with a denial of Procedural and Substantive Due Process in refusing to employ other acceptable means to ensure the safety of the institution, and the plaintiffs' medical needs of insulin and pain management medications as well as his mental health medications by refusing to employ a pat search when plaintiff could not clear the metal detector because of his back brace for serious back injures, see ¶ 173

188. Sgt. Mirabel has been employed at State Institution Graterford for the excess of more than five (5) years, he is fully aware of the policies and procedures surrounding inmates traveling through the metal detectors, and the process to be employed if an inmate can not clear a certain metal detector.

189. Sgt. Mirabel has escorted me at least 25 times or more in the past to receive my insulin and medical treatment and when I could not clear the metal detector, he have pat searched me on some of those occasions, and have watched other officers pat search me because of my back brace and server back pain in the morning.

190. Sgt. Mirabel had full knowledge of the deviation of the pat search procedure concerning officer McCollough and myself, see **EXHIBIT-A** initial grievance #676987 on May 4, 2017, 8;15am incident.

191. On April 27, 2017 upon being called to the unit managers' office to see Ms. A. Olivieri, she the called Sgt. Mirabel to come to her office. Upon his arrival into her office, once he saw me he immediately asked me, "what's up", plaintiff responded "you know what's up!" Wherein he asked for my institutional identification card and started an investigation

with the medical department concerning facts about my back and if I had anymedical issues they should know about.

192. He called the medical department, he then asked the staff member on the other end, "does Mr. Dews has any medical reasons that would preclude him from clearing the metal detector... Oh he has surgical parts in his back...well could he be issued a pass saying so, so that we will not have this problem with the metal detector" He hung up the phone and escorted me to the dispensary, (prison hospital) and I received my insulin that I was prevented from receiving earlier this morning, and I was also given a blue medical pass that states I have surgical parts in my back.

193. The facts of April 27, 2017 Sgt. Mirabel was the officer who called the medical department and had them issue me a medical pass so that I would not have this metal detector problem, see exhibit-E, but despite this, Sgt. Mirable continued to refuse to pat search me, see exhibits'-A,C,F. These are incidents' of Sgt. Mirabel refused to pat search me, and denied me access of the housing unit to receive my insulin treatment, and medication line for pain medications and mental health meads transpired after he had the medical pass issued to plaintiffs' on April 27, 2017, therefore it can be accepted that Sgt. Mirabel had full knowledge of the procedures to be employed once a suspected security concern relating to clearing a metal detector occurs, which is to **FIRST** perform a pat down search.

194. Later that morning at 8;15am plaintiff attempted to go to school and attempted to clear the detector could not clear it after three attempts, I was denied a pat search procedure by officer Ms. McCollough, I reported this to my unit manager Ms. A. Olivieri, and this officer did not want to hear nothing my unit manager had to say, so my unit manager called Sgt. Mirabel to the office, and explained the situation.

195. Sgt. Mirabel stated to me that "we are going out and you are going to attempt to clear the detector, if you can not, the officer will pat you down" as I attempted three times plaintiff could not clear the detector, Sgt. Mirabel motioned me over to him and he was getting ready to perform a pat search on me, see **EXHIBIT-A, grievance #676987-filed on May 5, 2017, incident happened on April 27, 2017.**

196. Officer Ms. McCollough sprinted over to the plaintiff and Sgt. Mirabel and literally ordered Sgt. Mirabel to "stop", and told the Sgt., "he cleared it once he can **now**" "emph. Added", Sgt. Mirabel stopped his pat down search of me, even though Sgt. Mirabel is officers' superior ranking officer, see, **Exhibit-A** initial grievance #676987.

197. Sgt. Mirable stated, "take off your back brace", I responded ny saying that, "I can not walk through the detector without my back brace, and I would have to undress in this hallway in front of everybody, I don't want you to degrade, humiliate and dehumanize me in public like this, take me to a private area", his answer was "No! go back on the block".

199. This is a violation and discrimination as well as retaliation on the part of officer Ms. McCollough and Sgt. Mirabel to refuse to issue a simple pat search that is apart of the security policy when an inmate ca not clear the detector, and a procedure that both of these officers have performed on me many times before in the past two yeas, this is retaliation, and deliberate indifference to my serious medical needs and my right to go to school, in violation of my 1st, 8th and 14th, 42 U.S.C. Amendments.

**COUNT III- 42 U.S.C. § 1983 RETALIATION IN VIOLATIO OF PLAINTIFFs' 1st 8th, and 14, CONSTITUTIONAL AMENDMENT RIGHTS BY DEFENDANTS CORRECTIONAL OFFICER MS. DJANAH McCOLLOUGH AND SERGEANT MR. PEDRO MIRABEL, DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MEDICAL NEEDS AND <u>HIS RIGHTS TO HIGHER EDUCATION AND TARGETING PLAINTIFF</u>**

200. Mr. Dews hereby incorporates all prior paragraphs from 1-165 as presented herein.

201. Defendants Correctional Officer Ms. Dajanah McCollough and Sgt. Mr. Pedro Mirabel at all times acted under the color of state law.

202. On April 30, 2017 officer McCollough and Sgt. Mirabel was posted on D-housing unit; Officer McCollough posted at D-housing unit front door, and Sgt. Mirabel assigned to run D-housing unit, and plaintiff houses on C-housing unit.

203. Plaintiff was coming from insulin and medication line medical treatment and plaintiff noticed officer McCollough abandon her post at D-housing unit and swiftly approached plaintiffs door officer Mr. D.J. Siefies, engaged in a 30 second conversation and then officer McCollough returned to her post.

204. Plaintiff arrived at his housing unit door and officer D.J. Siefies informed plaintiff that two officers told him to perform certain actions upon plaintiff, but officer D.J. Siefies stated that, "I am not going to do that to you, I can see how much pain you are in" I then asked Officer D.J. Siefies who these officers were, and he stated Correctional Officer Ms. Djanah McCollough and Sergeant Mr. Pedro Miral" I then asked Mr. D.J. Siefies, "Isn't those officers assigned to D-housing unit", Mr. D.J. Siefies stated, "yes", I responded by saying, "they have nothing to do with your post on another housing Door, unless you were in immediate confrontation with an inmate.

205. But the only objectives of these two officers were to recruit other officers to inflict pain and suffering and deny me access to medical treatment by not patting me down when I can't clear the metal detector, see complaint at ¶-¶ 59-66.

206. Wherefore for all the above reason the plaintiff humblely request that this Honorable Court rule in favor of the plaintiff and against the defendants' for violation of his 1st, 8th, and 14th Amendment Rights of the United States Constitution.

## SUPERVISORY LIABILITY AND DUTY

### COUNT IV- 42 U.C.S. § 1983 (VIOLATION OF THE FIRST, EIGHTH AND FOURTEENTH AMENDMENTS)( AGAINST JOSEPH C. KORSZNIAK, (CHCA) CORRECTIONAL HEALTH CARE ADMINISTRATOR

**207.** Mr. Dews hereby incorporates all the prior paragraphs from ¶¶ 1-165 as presented herein.

**208.** Defendant Mr. Joseph C. Korszniak (CHCA), at all times acted under the color of State Law.

**209.** Mr. Joseph C. Korszniak, (CHCA), here and after (Mr. Korszniak (CHCA) was well informed that plaintiff suffers from diabeties, and needs daily insulin care, as well as needing pain medications for his pain management prescription.

**210.** Defendant Mr. Korszniak, (CHCA) was well informed that plaintiff needed mental health medications daily.

**211.** Defendant Mr. Korszniak, (CHCA) was well informed about plaintiffs' being prevented from leaving his housing unit for insulin treatment, and pain medications and mental health medications, due to E-mail sent to him on May 8, 2017 by Dr. Jean Defrangesco, (CRNP) during one of numerious visits plaintiff made to sick call seeking aid from the correctional officers preventing plaintiff access to medical treatment due to his back brace and the correctional officers refusal to pat search plaintiff because plaintiff could not clear the metal detector.

**212.** Plaintiff filed inmate grievance #677003) on a Dr. Duval who is to have alleged to had made a directive statement to a medical staff member who relayed it to plaintiffs' unit manager Ms. A. Oliveri that, "plaintiff could remove his back brace and walk on own through the a metal detector without fear of injury to his spine-physical pain of experiencing server pain." This evaluation was by a doctor Duval over a phone, and its' acceptance by prison staff violated the deliberate indifference standard of the 8th Amendment, because Doctor Duval never met me or examined me to ascertain my pain levels, see ¶ 83.

**213.** In the initial review of grievance (677003) Mr. Korszniak, (HCCA) evaded the deliberate indifference portion of my grievance and basically said, "Doctor Duval does not work for the DOC and she is a psyaciatrist." "I cannot comment on any decision she has made" see ¶ 84. Mr. Korszniak's (CHCA), initial response not only expresses bold deliberate indifference, but his casual contact violates **SUPERIOR LIABILITY AND DUTY** creating an 8th and 14th Amendment **SUBSTANTIVE DUE PROCESS VIOLATION**, coupled with the facts that after ten (10) months, a directives comes from Central office directing the medical director to look into plaintiffs' back,

through x-ray and MRI that reveled that plaintiff has bulging, two separated screws and compressing, scoliosis and authoritist in his back.

**214.** Superintendent Ms. Cynthis Link, makes clear Mr. Korszniaks' deliberate indifference to my medical care and his 8th and 14th Amendment' willful and Wanton action of Procedural and Substantive Due Process violation when the Superintendent states in her Second level grievance response, "In your initial response, you stated Dr. Duval does not work for the DOC and she is a psychiatrist. Although she is a psychiatrist, The Correctional Health care Administrator oversees that Department and therefore can address the grievance regarding directives given by Dr. Duval." see complaint at ¶ 85

**215.** Mr. Korszniak, (CHCA), at all times had direct involvement or a causal connection to the events that were causing the plaintiff to be denied access to his **(insulin, pain and mental health medications).**

**216.** Rather then immediately using his authority as the correctional heath care administrator as stated by initial grievance office Lt. T. McGrier stated on the grievance response #676016-exhibit-C the initial response, **Medical pass for exemption must be obtained through the medical Dept. Administration**", but Mr. Korszniak, (CHCA) used politics, and political polish when he drafted his initial response to every grievance I would file against parties denying me access to my serious medical needs, (insulin, mental health and pain medications).

**217.** The plaintiff was not only suffering from being deprived his needed medications through acts of deliberate indifference, but denial of policy statement due process, and out right harassment and retaliation by unprofessional prison staff members.

**218.** In plaintiffs pleas for help through numerous visits to inmate sick call seeing doctors, and Mr. Korszniak, (CHCA) through e-mail from Dr. Jean Defrangesco, CRNP on May 8, 20117, plaintiff received false courteous formality's all designed to escape or avoid performance or fulfillment of his duty of adequate medical care to plaintiff, by siding with the correctional officers Ms. Djanah McCollough, Mr. Pedro Merial and Ms. Cynthis Link, the superintendent, by avoiding giving plaintiff a direct answer in an attempt to battle the plaintiff by presenting an erroneous explanation in Mr. Korszniak, (CHCA)'s response.

**219.** Mr. Korszniak, (CHCA)'s retaliation against plaintiff for filing suit against him, (see, ¶ 3), is the reasoning for his incompetent responsibility to proved the plaintiff adequate medical care by evading his responsibility by doing what ever he wanted to do against plaintiffs' need for medical care.

**220.** Such was the case when Mr. Korszniak, (CHCA) answered plaintiffs' grievance that was on himself, which is being the defendant and the judge in the grievance against himself, which is a violation of plaintiffs' 1st and 14th Amendments of the United States.

WEREFORE, Mr. Dews respectfully request this court award him:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in the amount of $250.000 according to proof and which is fair, and just, and resonalble;

C. Attorney fees and the coast of this action ousuat to 42 U:.S.C. §§ 1983, 1988, and 1997e(d); and

D. Such other and further relief as to which Mr. Dews may be justly intitled.

### COUNT V –42 U.S.C. § 1983 Violation Of Eighth and Fourteenth Amendment , denial of due process and Denial of medical care against Ms. Cynthia Link, Superintendent

221. Mr. Dews hereby incorporates all prior paragraphs from 1-220 as presented herein.

222. Superintendent Ms. Cynthia Link at all times acted under the color of state law.

223. Superintendent Ms. Cynthia Link was aware of Mr. Dews was having a problem with officers Ms. Dajahan McCollough and Sergeant Mr. Pedro Mirabel denying him access off the block because they refused to issue a pat search because he could not clear the metal detector because of his medical assigned back brace by evident of her personal involvement on April 27, 2017 when she denied plaintiff access to medication, see complaint at ¶-¶ 40-45.

224. Superintendent Cythia Link had further knowledge of the 8th Amendment violation when she responded to the second level appeal process that she refused to remedy by failing to supervise her subordinates who committed the violations, see complaint at ¶ 49.

225. Further, Superintendent Cynthia Link evaded the facts of a violation of procedural due process of the 14th Amendment by becoming judge and jury in answering a grievance written against herself, see grievance #676998 exhibit-B and complaint at ¶ 51.

226. Superintendent Cynthia Link exceeded an affirmative casual link between the supervisors actions and the plaintiffs injuries, were she took part in denying plaintiff his access to medications, yet turns around and states in her grievance response to grievace #676998 exhibit-B that, "while you should not have been denied your medication". see complaint at ¶ 52.

227. Superintendent Cythia Link was aware that the plaintiff would incur pain and suffering if he did not get his serious medications for insulin and mental and pain medications. That Superintendent Cynthis Link had a dutu th ensure that plaintiff received adequate medical care and

failed to do so, Superintendent Cynthia Links' deliberate Indiffrence to plaintiffs serious medical needs violated plaintiffs constitutional rights to adequate medical care.

228. That by this conduct superintendent Cynthia Link exhibited a willfut, wontan, malicious, and or recless diregard for, or indifference to, plaintiffs' constitutional rights. As a direct and proximate result of superintendent Cynthia Links' acts as set forth above plaintiff sustyanined physcial injuries and psychological harm.

WEREFOREE, Mr. Dews respectfully request:

A. Conpensatory damages in the amount to be determind at trial;

B. Punitive damages in the amount of $250.000 according to proof and which is fare, just, and reasonable;

C. Attorneys fees and the cost of this action pursuat to 42 U.S.C. §§ 1983, 1988, and 1997e(d); and

D. Such other and further relief as to which Mr. Dews may be justly intitled.

### COUNT VI-42 U.S.C. § (Violation of Eighth and Fourteenth Amendments) (against Cynthia Link and Joseph C. Korszniak, (CHCA) in ther official capacities, and for Discrimination and Retaliation

229. Mr. Dews hereby incorporates all prior paragraphs, ¶-¶ 1-128 as presented herein.

230. All above defendants at all times acted under the color of state law.

231. The DOC Chief grievance officer Ms. Dorina Varner at secretary's office confirmed in grievance #676975 exhibit-F that "contact with the institution [Graterford] found that if the metal detector can't be cleared, pat searches are conducted"

232. The DOC issued a medication policy which prohibits inmates to receive medication after a specific time, upon information and belief, the medication policy is still in effect today.

233. The DOC know that Mr. Dews cannot comply with the medication policy until he clears the metal detector or is pat searched, and yet, the DOC and its' staff refused to make an exception for Mr. Dews to accommodate his serious medical needs for approximately a year plus.

234. The medication policy as applied to Mr. Dews is deliberately indifference to his serious medical needs to take insulin and mental and pain medications on a regular basis and violates his rights to adequate medical care.

235. The DOC discriminated and retaliated against Mr. Dews. It allows other inmates to receive their insulin and pain medication as well as those in Mr. Dews' situation who has to be pat searched and proceed to medication but refuses to provide this accommodation to Mr. Dews, see complaint at ¶-¶ 136-139

236. The DOC has a duty to assure that Mr. Dews receives adequate medical care and failed to do so.

237. As Lt. T.McGrier,the investigator of the grievances stated in Mr. Dews grievance response, "A medical pass for exemption must be obtained through the medical dept.Administration.", see complaint at ¶ 94 as well as exhibit-#676016.

238. The Mr. Korszniak, (CHCA) refused to stamp an approval for Mr. Dews' pass for exemption, two nurses tried to disregard Mr. Korszniak (CHCA)'s deliberate indifference to Mr. Dews serious medical problem with correctional officer staff as stated by Mr. Lt. T. McGrirer the grievance investigator; and Mr. Dews recieved the pass that superintendent and Mr. Korszniak says that they don't provide, see complaint at ¶ 140 as well as the initial grievance response #676975 as exhibit-F

239. Although Mr. Dews received the medical pass that says I have surgical hardware in my back issued by E. McKim, LCN on April 27, 2017, and another one issued on 9-1-17 by Mr. Stephen Kaminsky, PA-C, see exhibits-E,these passes were disregarded by correctional officers Ms. Djahan McCollough, Sergeant Mr. Pedro Mirabel and the superintendent Cynthia Link, and Mr. Dews Continued to be denied access to his medical insulin, mental health and pain medications.

240. But yet, the superintendent turns around and states in her grievance response #676998, "while you should not have been denied your medication",see complaint at ¶ 52, as well as exhibit-B. Then turns around and state in grievance #678507, "I do apologize for any confusion" see complaint at ¶ 106, as well as exhibit-H.

241. This is a clear declaration of 1st, 8th and 14th Constitutional violations of Mr. Dews' rights that has created server harm now and future damage to Mr. Dews vital organs that could cause death.

242. Mr. Dews has a reasonable and well-grounded fear, in absence of an order permanently enjoining the DOC and its' officials, the DOC will again to except Mr. Dews from metting the medical policy that will cause him physical and psychological harm in violation of his constitutional rights.

WHEREFORE, Mr. Dews respectfully request that this Court:

A.Permanently enjoin Defendants Mr. Joseph C. Korszniak, (CHCA), Superintendent Ms. Cynthia Link, as officials of the DOC at SCI-Graterford, from refusing to issue an exception to his medications for his serious medical injuries, (diabetes,server nerve damage, mental health medications and other medications for server pain;

B. Require defendants Mr. joseph C. Korszniak, (CHCA) and Superintendent Ms. Link, as officials of the DOC at SCI-Graterford, to ensure that no DOC employee or other employee at SCI-Graterford prevents Mr. Dews from obtaining, or otherwise interfere with Mr. Dews' ability to obtain, his insulin treatment, mental health and pain medications;

C. Compensatory damages in an amount to be determined at trial;

D. Punitive damages in the amount of $250.000 according to proof and which is fair, just and reasonable.

E. Award him attorney's fees and the cost of this action pursuant to 42 U.S.C. §§ 1983, 1998, and 1997e(d)

F. Award him such other and further relief as to which he may be justly entitled.


## COUNT VII-42 U.S.C § 12132 (Violations of Title II of the Americans with Disabilities Act) (against the Pennsylvania Department of Corrections and Cynthia Link and Joseph C. Korszniak, in their official capacities)

243. Mr. Dews hereby incorporates all prior paragraphs 1-242 as if presented herein.

244. Plaintiff suffers from serious pain from previous back surgery, as well as newly discovered scoliosis, two fractured screws, bulging, authoritist, compression all in his back, that limits his ability to participate in critical life activities, Accordingly, Mr. Dews is a qualified individual with disabilities under the ADA, 42 U.S.C. § 12131.

v   245. plaintiff Mr. Dews' newly discovered above sited injuries discovered as a result of ten grievances that contained all indications that the plaintiff was suffering serverely from new injuries to his back.

246. As a result of this delay in ordering x-rays and an MRI, Mr. Dews suffered for almost a year before his complaints landed on a the desk of Dr. Noel the head doctorr of medical care at Graterford, who e-mailed Dr. Stephen Weiner, DO at Graterford who is the current medical director there, and directed him to take a look at Mr. Dews' back.

247. Mr. Dews' ten grievances were ignored and treated with deliberate indifference by all medical doctors and the investigating staff until Dr. Dr. Noel forwarded the above stated e-mail to Graterfords medical director Dr. Stephen Wiener, DO.

248. The DOC is a "public entity" within the meaning of the ADA 42 U.S.C. § 12121(1). The DOC operates services, programs, or activities within the meaning of the ADA.

249. The DOC denied Mr. Dews the benefit of a reasonable modification of the security policies as it relates to the metal detectors, were if you cannot clear the detector a pat search is issued, by refusing to

allow the pat search to Mr. Dews in order for Mr. Dews to receive his medical care, this was deliberate indifference and discrimination against Mr. Dews because other inmates **receive the accommodation of a pat search and allowed to receive their medical care.**

**250.** The requested accommodation by Mr. Dews too be pat searched would not have caused an undue financial, administrative burden or a security risk on the DOC, CCS or their respective employees, because among other reasons was already being pat searched since 2007.

**251.** Once the DOC started denying Mr. Dews an accommodation of a pat search, Mr. Dews Requested this accommodation to be reinstated many times but his request were repeatedly denied, in violation of the ADA.

**252.** The DOC refused to accommodate Mr. Dews serious medical needs violated his right to adequate medical care as guaranteed by the 1st, 8th, and 14th Amendments to the United States Constitution.

**253.** The DOC acted with deliberate indifference to Md. Dews' constitutional and Statutory Rights. To the extent that medical care providers employed by CCS were responsible for Mr. Dews receiving his medication or the refusal to provide an accommodation to Mr. Dews, the DOC is liable for CCS's conduct. see, e.g., 28 C.F.R. §35.152(b)(1).

**254.** As a direct and proximate result of the DOC's conduct as set forth above, Mr. Dews sustained physical injuries, emotional harm and psychological harm and fear.

**255.** As a result of the discrimination by the DOC and its employees and the deliberate indifference of the CCS created astronomical fear in Mr. Dews to the point were he was intimidated on most days from going to insulin treatment in the morning as a result of the evil conduct of the DOC and its' employees.

**256.** Mr. Dews has a reasonable well-grounded fear that absence of an order permanently enjoying the DOC, these enemies will continue to refuse to issue an accommodation to the pat search policy to Mr. Dews in relation to his medical care treatment of his insulin and **MENTAL** and pain medication line movement, as it relates to the refusal to accommodate Mr. Dews with the approved pat search policy, because Mr. Dews has missed numerous morning treatments of the above medical care for fear of the DOC and its' employees trying to force Mr. Dews to walk through the detector in debilitating pain without the support of his back brace, which if left uncorrected will cause Mr. Dews permanent physical and psychological harm.

**WHEREFORE,** Mr. Dews respectfully request this Court:

**A.** Award him compensatory damages in an amount to be determined at trial;

**B.** Punitive damages for the amount of &250.000 and or what is reasonable and just.

**C.** Permanently enjoin the DOC, Cynthia Link, and Joseph C. Korszniak

from refusing an exception of a pat search to Mr. Dews which is apart of the security policy that is extended to all other inmates in Mr. Dews medical situation.

**D.** Require the DOC, Cynthia Link and Joseph C. Korszniak to ensure that no DOC employees or other employees as SCI-Graterford prevents Mr. Dews from obtaining, or otherwise interferes with Mr. Dews' ability to obtain his insulin care and **mental** and pain medications during the medication line movements.

**E.** Award him attorneys' fees and the cost of this action pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 974a; and

**F.** Award him such other and further relief as to which he may be justly entitled.

## COUNT VIII- 29 U.S.C. § 794 (Violation of Section 504 the Rehabilitation Act) (Against the Pennsylvania Department of Corrections and Cynthia Link and Joseph C. Korszniak, in their official capacities

**257.** Mr. Dews hereby incorporates all prior paragraphs 1-256 presented herein.

**258.** The DOC, Cynthia Link and Joseph C. Korszniak acted at all times under the color of state law.

**259.** Mr. Dews suffers from server physical disabilities from previous back surgery but not limit to, that limits his ability to participate in critical life activities. Accordingly, Mr. Dews is a qualified individual with disabilities under the RA.

**260.** Upon information and belief, the DOC is a recipient of federal financial assistance within the meaning of the RA. The DOC operates services, programs, or activities within the meaning of the RA.

**261.** The requested accommodation did not cause an undue financial or administrative burden on the DOC, CCs, or their respective employees, because, among other reasons, Mr. Dews was being pat searched since 2007 because of his back surgery and need to wear his back brace that relieved existing pain.

**262.** Mr. dews requested this accommodation many times within ten grievances and visits to inmate sick call to see doctors, but his request were denied in violation of the RA.

**263.** The DOC discriminated against Mr. Dews. They allowed other inmates to be pat searched when unable to clear the metal detector, but refused to provide this accommodation to Mr. Dews.

**264.** The DOC acted with deliberate indifference to Mr. Dews' constitutional statutory rights.

**265.** As a direct and proximate result of the DOC's conduct as set forth above, Mr. Dews sustained physical injuries and emotional and psychological harm.

266. As a direct and proximate result of the DOC's conduct as set fourth above, Mr. Dews sustained physical injuries, emotional harm and psychological harm and fear.

**WHEREFORE,** Mr. Dews respectfully request that this Court:

A. Award him compensatory damages in an amount to be determined at trial;

B. Punitive award of the amount of &250.000;

C. Permanently enjoin the DOC, Cynthia Link, and Joseph C. Korszniak from refusing to allow Mr. Dews be granted the same accommodation that is provided to other inmates, that if he cannot clear the metal detector because of his back brace, that the security policy of being pat searched be employed on Mr. Dews to ensure that Mr. Dews receives his serious medical treatment during medication running lines.

D. Require the DOC, Cynthia Link and Joseph C. Korszniak to ensure that no DOC employees or other employees at SCI-Graterford prevents Mr. Dews from obtaining, or otherwise interfere with Mr. Dews' ability to obtain his Constitutional right to adequate medical care.

E. Award him attorneys' fees and the cost of this action pursuant to 29 U.S.C. § 794a; and

F. Award him such other and further relief as to which he may be justly entitled.

## COUNT IX-42 U.S.C. § 12132 (Violation of Title II of the Americans With Disabilities Act)(1st, 8th and 14th Amendment Violations Against Correct Care Solutions

267. Mr. Dews hereby incorporates all prior paragraphs 1-266 as presented herein.

268. Defendant Correct Care Solutions at all times acted under the color of state law.

269. Mr. Dews suffers from a serve back injury from prior back surgery, that limits his ability to participate in critical life activities. Accordingly, Mr. Dews is a qualified individual with disabilities under the ADA, 42 U.S.C. § 12131.

270. Correct Care Solutions is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1). Correct care Solutions over sees the health care service to inmates under the care of their employees that operate under services, programs, or activities within the meaning of the ADA.

271. The employees of Correct Care Solutions denied Mr. Dews the benefit of a reasonable modification of the security procedures employed

to inmates who cannot clear the detector, who should be pat searched because of a medical device, by not intervening in their Correctional health care Administrators refusal to interven in Mr. Dews being denied access to his insulin care and mental and pain medications because his back brace goes off on the metal detectors and correctional officers refusing to employ a pat down search of Mr. Dews so that he could get his medical care, which is a level of security employed at Graterford see complaint at ¶ 130.

272. The requested accommodation could only come from the **Medical Administrator, (CHCA)** as stated by grievance officer Lt. T. McGrier, see complaint at ¶ 94. Which would not have caused an undue financial or administrative burden on the DOC, CCS or their respective employees, because, among other reasons, Mr. Dews have been pat searched since 2007.

273. Mr. Dews requested this accommodation many times, but his request were repeatedly denied in violation of the ADA, and Correct Care Solution is responsible to properly see to it that their employees are properly trained in managerial skills that would intervene in an inmate being denied access to his insulin care and mental and pain medications for server pain.

274. Correct Care Solutions discriminated against Mr. Dews by allowing other inmates be provided with this requested accommodations but not Mr. Dews, see complaint at 56 where the superintendent states, **"you have been witnessed confronting staff in an agressive manner. As such you present a security concern and pat search is not appropriate"** also see exhibit-B.

275. If true, and proof is demanded, this does not make it appropriate for a serious medical concern to be denied, because without this medical treatment plaintiff has suffered serious pain and suffering along with diabeties complications that could resuld in death, this is a Violation of the ADA because these denials of medical care is because of plaintiffs medical device, and Correct Care Solutions did nothing to stop or prevent further denial of plaintiffs medical care, further, the superintendent turns around and state in plaintiffs' grievance response "while you should not have been denied your medications" see complaint at ¶ 52. also see exhibit-676998, then in grievance response #678507 the superintendent states, "I do apologize for any confusion" see complaint ¶ 106, and neither Correct Care Solution or the superintend prevented the continued denial to Mr. Dews to be pat searched and proceed to get his insulin treatment and mental and pain medications.

276. Mr. Dews' family member Ms. Lorraine Durham made phone calls to Graterford and spoke directly to superintendent Cynthia Link and informed Ms. Durham that Mr. Dews will not be denied his medical care, but it continued, see complaint at ¶-¶ 124-125. As well as call central office and spoke to a Mr. Jeff Reuschen, an employees of Correct Care Solution, and was told that they would look into it, and Mr. Dews would no longer be denied his insulin, mental and pain medications, but the denials continued, see complaint at ¶-¶ 126-128 see telephone records exhibit-F attachment as exhibit-D.

WHEREFORE, , Mr. Dews respectfully request that this Court:

A. Award him compensatory damages in the amount to be determined at trial.

B. Award Punitive damages in the amount of &250.000 for pain and suffering by way of violations of Mr. Dews' 1st, 8th and 14th Amendment rights to adequate medical care.

C. Permanently enjoin the DOC, Cynthis Link and Joseph C. Korszniak from refusing to issue an exception of the security policy a pat search so that Mr. Dews could obtain his serious needed medical care for his diabeties, and server nerve damage as well as his metal health medications.

D.   Award him attorney's fees and the cost of this actions pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a; and

E. Award him such other and further relief as to which he may be justly entitled.

### COUNT X-29 U.S.C. § 794 (Violation of Section 504 of the Rehabilitation Act) (against The Correct Care Solution in their Official Capacities

277. Mr. Dews hereby incorporate all prior paragraphs, 1-276 present herein.

278. Correct Care Solution operates at all times under the color of state law.

279. Mr. Dews suffers from physical disabilities, server pain as a result of prior back surgery, and recently discovered bulging disc, scoliosis, compression, two broken screws in his back, discovered by recent x-ray and MRI, that limits his ability to participate in critical life activities, Accordingly, Mr Dews is a qualified individual with disabilities under the RA.

280. Upon information and belief, Correct Care Solution is a medical provider contracted by the DOC, who is a recipient of federal financial assistance within the meaning of the RA. The DOC operates services, programs, or activities within the meaning of the RA.

281. As a direct and proximate result of the Correct Care Solution contracted by the DOC, the DOC's conduct as set forth above, Mr Dews sustained physical injuries, emotional harm and psychological harm and fear.

282. The requested accommodation did not cause and undue financial or administrative burden on the DOC, CCS, or their respective employees, because, among other reasons, Mr. Dews was being pat searched since 2007.

283. Mr. Dews requested these accommodations many times, but his requests were denied in violation of the RA.

284. Correct Care Solution was aware that the DOC was discriminating against Mr. Dews, they allowed other inmates to receive pat searches when they could not clear the metal detectors in order to receive medical care, but denied this security measure to Mr. Dews in order for him to get his medical care needs achieved, and Correct Care Solution did nothing to prevent these **1st, 8th and 14th CONSTITUTIONAL VIOLATION AGAINST Mr. Dews.**

**285.** Correct Care Solutions did nothing to prevent the DOC's **deliberate indifference, discrimination and retaliation** to Mr. Dews' constitutional statutory rights.

**286.** To the extent that medical care providers employed by CCS were responsible for the DOC's refusal to provide an accommodation to Mr. Dews, the DOC is accountable for CCS's conduct. See, e.g., 28 C.F.R.§ 35.152(b)(1).

**287.** As a direct and proximate result of the DOC's conduct as set forth above, Mr. Dews sustained physical injuries and emotional and psychological harm.

**WHEREFORE,** Mr. Dews respectfully request that this Court:

**A.** Award him compensatory damages in an mount to be determined at trial;

**B.** Award Punitive damages in the amount of &250.000

**C.** Permanently enjoin the DOC, Cynthia Link, Joseph C. Korszniak from refusing to issue an exception to be pat searched if Mr. Dews cannot clear the metal detector because of his medical device (back brace) that significantly helps to relieve Mr. Dews' back pain, and allows him to walk in some normal function to get his serious medical needs meet.

**D.** Award him attorney's fees and the cost of this action pursuant to 29 U.S.C. § 7945; and

**E.** Award him such other and further relief as to which he may be justly entitled.

**COUNT XI- VIOLATION OF 8th, 14th AMENDMENTS, 42 U.S.C. § 1983, DELIBERATE INDIFFERENCE TO ADEQUATE MEDICAL CARE AGAINST THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS FOR CONTRACTING CORRECT CARE SOLUTION AND REPEATEDLY DENY INMATES THEIR SUBSTANTIAL AND PROCEDUAL DUE PROCESS RIGHTS**

**288.** Mr. Dews hereby incorporates all prior paragraphs ¶-¶ 1-287 presented herein.

**289.** That the DOC at all times acted under the color of state law.

**290.** That the DOC at all times had prior knowledge of the many claims of deliberate indiffrence that the Correct Crare Solutions, (hereafter CCS), was found liable for in federal court under the P.L.R.A. Act 42. U.S.C. § 1983, for violating the 8th and 14th Amendments of the United States Constitutions while over seeing prisoners medical care. See exhibit-Q.

**291.** The mere fact the CCS presented the lowest contract bid for the medical care of all Pennsylvania State prisoners is not enough justification to except a health care provider that is constantly in

Federal and State Courts defending violate claims of deliberate indifference, whanton, willful and malicious misconduct by the CCS, where the CCs has caused deaths, permanent injuries not limited too parapalegics and blindness see exhibit-Q.

292. That the DOC is enjoined as the proximate cause of every 8th and 14th Amendment Violation of Americans with Disabilities Violations and the rehabilitation Act (RA) caused by the CCS. Thereby creating a deliberate indifference violation of the 8th Amendment upon the DOC by creating and un-acceptable risk for employing the CCS to oversee the medical care of the 51,000 Pennsylvania Prisoners without detesting the employment/contract of the CCS.

293. The DOC medical records of Mr. Dews will establish that through his persistence, his medical records **NOW** revele that Mr. Dews has injuries and medical illnesses that are so server that CCS can no longer prolong its acts of deliberate indiffernce in putting on paper that Mr. Dewsw qualify as a candidate for the title of "Americans with disabilities" in need of accommodations to successfuly perform his life duties and his life functions without assistance from the "Rehabilitation Act (RA).

294. The requested pat search accommodation was in existence for Mr. Dews, yet for personal reasons between the two Correctional Officers Ms. McCollough and Sgt. Mirabel and the Superintendent Ms. Cynthia Link in their abuse of power created a denial of this long standing accommodation and no matter what Mr. Dews did or agreed to do, the accommodation of a pat search was side stepped by Mr. Korszniak and the above mentioned defendants. Under the guide of any investigation conducted against a staff member, "you must first work to protect the institution", well a pat search is apart of the security policy that protects the institution in which is an accommodation afforded all other inmates accept for Mr. Dews.

295. Mr. Dews requested these accommodations many times, but his request were denied in violation of the ADA.

296. The DOC discriminated against Mr. Dews, they allowed other inmates to receive pat searches, but refised to provide this accommodation to Mr. Dews.

297. The DOC acted with deliberate indifference to Mr. Dews' constitutional and Statutory rights.

298. To the extent that medical care providers employed by CCS were responsible for the conduct against Mr. Dews being denied his insulin because of a medical device that he could not remove and walk without server pain and suffering and or not being able to take a step to walk through the metal detector because of his injuries, the CCS is responsible for the DOC's conduct see, e.g., 28 C.F.R. § 35.152(b)(1).

299. As a direct and proximate result of the DOC's conduct as set forth above, Mr. Dews sustained physical injuries and emotional and psychological harm.

300. Mr. Dews has a reasonable and well-grounded fear that, in the absence of an order permanently enjoining the DOC, these entities will again refuse to issue an exception to the security policy that has pat search as an alternative when he cannot clear the metal detector, which will cause Mr. Dews him physical and psychological harm.

WHEREFORE, Mr. Dews respectfully request that this Court:

A. Award him compensatory damages in an amount to be determined at trial.

B. Award Punitive damages in the amount of &250.000 for the violation of his statutory substantive constitutional rights.

C.  Permanently enjoin the DOC, Cynthia Link, and Joseph C. korszniak from refusing to issue an exception to the security policy so that Mr. Dews can receive his seriously needed medical treatment.

D.  Require the DOC, Cynthia Link, Joseph C. Korszniak to ensure that no DOC employee or other employees of SCI Graterford prevents Mr. Dews from obtaining, or otherwise interferes with Mr.ability to obtain his needed diabetes treatment and mental and pain medications at the time that lines permit.

E.  Award attorneys' fees and the cost of this action pursuant to 29 U.S.C. § 794a;and

F. Award him such other and further relief as to which he may be justly entitled.

Respectfully Requested:

Date 6-7-18

Eugene Gregory Dews Bj-3445 pro se
P.O. Box 244
SCI-Graterford
Graterford, Pa. 19426.

## VERIFICATION

I, Mr. Eugene Gregory Dews, hereby certify that I declare under penalty of perjury that all information contained herein is true and correct.

Date: 6-7-18

_Eugene Dews_
Eugene Gregory Dews

---

## CERTIFICATE OF SERVICE:

I Mr. Eugene Gregory Dews, hereby certify that I declare under penalty of perjury under the Laws of the United States that the foregoing is true and correct. 28 U.S.C. § 1746 (1).

### MANNER OF SERVICE:

UNITED STATE POSTAL SERVICE, FIRST CLASS MAIL, POSTED PREPAID.

### DOCUMENTS SERVED:

Civil Action Complaint 42 U.S.C. § 1983

### PERSONS SERVED:

| | |
|---|---|
| Ms. Cynthia Link, Superintendent<br>State Correctional Institution<br>Graterford, P.O. Box 244<br>Graterford, Pa. 19426 | : Corretional Officer Mr. Pedro Mirabel<br>: State Correctional Institution<br>: Graterford, P.O. Box 244<br>: Graterford, Pa. 19426 |
| Correctional Officer Ms. Djanah<br>McCollough, State Correctional<br>Institution Graterford<br>P.O. Box 244<br>Graterford, Pa. 19426 | : Mr. Joseph C. Korszniak, (CHCA)<br>: Correctional Health Care<br>: Administrator; Correctional<br>: Institution Graterford, P.O. Box 244<br>: Graterford, Pa. 19426 |
| Department Of Corrections, 1920<br>Technology Parkway<br>Mechanicsburg, Pa. 17050 | : Correct Care Solutions, 1283<br>: Murfseesboro, Rd. Suit 500<br>: Nashville, Tn. 37217 |

Date: 6-7-18

_Eugene Dews_
Eugene Gregory Dews BJ-3445
SCI-Graterford
P.O. Box 244
Graterford, Pa. 19426.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Eugene Gregory Dews, pro-se : SUED IN THEIR OFFICIAL
        PLAINTIFF : AND INDIVIDUAL CAPACITY
  :
   VS. :
  : **18**    4285
Cynthia Link, Ex-Superintendent, SCI- : CIVIL ACTION_____
Graterford; Correctional Officer Ms. Djanah :
McCollough, SCI-Graterford; Correctional : JURY TRIAL DEMANDED
Officer (Sergeant) Pedro Mirabel, Graterford; :
Department Of Corrections; Mr. Joseph C. :
Korszniak, (CHCA) Correctional Health Care :
Administrator SCI-Graterford; Correct Care :
Solution, SCI-Graterford Contract Medical :
Provider. :
             DEFENDANTS :

---

## MEMORANDUM OF LAW IN SUPPORT OF CIVIL ACTION 42 U.S.C..§§1983
## DENIAL OF MEDICAL CARE; RETALIATION; 1st, 8th, 14th Amendments:

### JURISDICTION:

    This Honorable Court has Jurisdiction over this Civil Action, When

a claim of a First, Eight and Fourteenth Amendments of the United States

Constitution, are Proven to have been violated by the Defendants.

### EIGHTH AMENDMENT:

    In prison Medical Care cases, There is an objective component in

addition to a Subjective one; The Eighth Amendment deprivation must in

fact be "sufficiently serioua." **FARMER VS. BRENNAN**, 511 U.S. 825, 114

S.CT. 1970, (1994). The 10th Circuit put it this way; "We have said that

a " medical need is sufficiently serious if it is one that is so obvious

that even a lay person would easily recognized the necessity for a doctors

attention." **MATA VS. SAIZ**, 427 F.#d. 745, 751, (10th Cir. 2005), (quoting

**Sealock vs. Colorado**, 218, F.3d. 1205, 1209 (10th Cir. 2000). In the case

before it, the tenth Circuit found that the plaintiff inmate had

presented sufficient evidence of this objective component by showing that

she suffered unnecessary pain and a worsening of her condition, namely

permanent and irreversible heart damage. In the instant case the plaintiff

1.

Mr. Eugene Gregory Dews is a diagnosed diabetic needing insulin and glucose finger stick treatment twice daily, once at 6'30am and once again at 6;oopm at the institutional hospital. In the morning Mr. Dews is to check his glucose sugar levels, thereafter, if his glucose level is above 200, Mr. Dews is to receive an injection shoot of insulin, but if it is below 200, Mr. Dews does not receive an insulin shoot.

This process is repeated at 6;00pm with one differentation, no matter what Mr. Dews' glucose level registers he is to receive 38 units of lantis insulin, and if his glucose level is above 200, he is to receive an additional shoot of insulin amounting to two insulin shoots, see complaint ¶¶ 12-13.

The plaintiff suffers from other medical ailments but, is not jermaine to the premise of this civil action. Plaintiff had major back surgery in 2007 from four (4) herniated disc, and spinal stennosis were plaintiff had two six (6) inch rods and six screws were inserted in his back, as well as having the herniated disc fused, see complaint at ¶¶ 14-15.

Plaintiff also suffers from neuropathy and has double crushed nerves in his neck that cause server nerve pain that shoots up his neck and across the top of his head, as well as serious nerve pain that runs down plaintiffs both arms, complaint at ¶-¶ 15-18 and ¶ 25. Plaintiff take 100mg of Ultram, 900mg neurotin, 50mg baclafen three time daily for the server nerve pain, and back pain.

Medical staff would not provide him with a blue medical pass after he had the surgery to show officers posted at security gate/doors with metal detectors, so to protect plaintiff from unnecessary direct orders to remove his back brace that plaintiff was issued to were for support and the relief of a major part of nerve pain he experience especially in

2.

the morning when it was impossible for plaintiff to remove the brace and take a step without debilitating pain shooting down his legs, see ¶ 25.

Since 2007, plaintiff has been pat searched, (which is a part of the institutional security policy for inmates who can not clear the metal detectors, to be pat searched, see final grievance appeal from secretary's chief grievance officers response to grievance #676975 Ms. Dorina Varner), with no problems until two officers and the superintendent ignited retaliatory acts against the plaintiff, refusing to pat search plaintiff in the mornings at 6;30am so that plaintiff could get his needed insulin care.

I had personal arguments with one of the defendant officer Ms. Djanah McCollough, who use to force me to go through the metal detector three and four times before she would pat search me. When I mentioned to her that I have witnessed her waving inmates through to medication lines without them going through the metal detector or being pat searched. Officer basically she told me that "it is none of my business what I do".

These incidents before April 27, 2017 from that point on she started denying me my access to go get insulin care and pain medication lines because I told her what I saw her do with two other inmates who she just waved on and said, "go ahead", from that point on when I could not clear the metal detector after attempting three to four times and sending me back on the housing unit without getting my insulin and medication care.

In a grievance response, (grievance #676987) of june 15, 2017 see exhibit-A second level appeal, which also contains the superintendents denial of my access to medication lines because as she stated in grievance #676998 initial response of the remand from superintendent ware she states "why you should have not been denied your medication." she goes on to state "...You have been witnessed confronting staff in a aggressive

3.

manner.", also see complaint at ¶-¶, 40-46

Sergeant Mr. Pedro Mirabel's actions of preventing me from going to insulin care and pain medication lines for server nerve pain that debilitates the plaintiff, nerve pain shooting up to plaintiffs head and down his arms from double crushed nerve in his neck is a violation of plaintiffs 8th, 14th Amendment rights, see ¶¶, (sic 25), 36.

### DELIBERATE INDIFFERENCE:

In ADAMS VS. POAG, 61 F.3d. 1537 (11th. Cir. 1985), The Honorable Court stated that analysis of a claim of deliberate indifference to a prisoners serious medical needs had two components: Was there serious medical need and did defendants' response constitue deliberate indifference to it? The court went on to characterize deliberate indifference in several ways: Knowledge of the need for medical care coupled with an intentional refusal to provide it, such grossly inadequate or inadequate care that it shocks the conscious; a medical decision to take the easier and less efficacious course of treatment, the prevision of cursory medical care when the need for treatment is obvious; and delay in access to medical care that is the equivalent of unnecessary and wanton infliction of pain.

The insulin injections and glucose checks are serious medical needs for diabetics administered at 6;30;am and at 6;00pm daily until completed, the inmates are called together from (5) cell blocks (A-E), the plaintiff would proceed to the front of the housing unit with the rest of the diabetics from their his housing unit.

On April 27, 2018 approximately 8;15 plaintiff proceeded to leave the housing unit to go to school, Upon attempting to clear the metal detector three to four times and then asking officer Ms. McCollough to pat search me so that I could go to school, she answered, "NO!, go back on

4.

the block until you clear the metal detector." I explain that I cannot walk without the use of the tightened support of my back brace, she responded "so", see complaint ¶¶ 31-32

The plain facts are that I have attempted numerous times to clear the detector ten (10) times with this officer and each time I set the detector off three to four times and was just sent back on the block without a security search because I made the detector go off, nor did officer Ms. Djanah McCollough call the security team determine why I am setting the detector off, this shows a plain case of her actions of denying me to go get medical care, (insulin and pain medication lines are not of penalogical security interest, see complaint, ¶¶ 36-37.

There was not legitimate medical or penalogical reason for officer Ms. Djanah McCollough to have refused to not continue to accommodate the plaintiff's back problem, were plaintiff has been pat searched since 2007 because of the need for plaintiff to wear his back brace.

May 5, 2017 defendant sergeant Mr. Pedro Mirabel refused to allow me to go get insulin again after I could not clear the detector, and after telling him numerous times as I have before that I can not walk without my brace because my pain is too bad, he stated, " Go back on the block, now go write your grievance, that's per superintendent", see complaint at ¶¶ 79-80. Correctional officer Sergeant Pedro Mirabel was aware that plaintiff has diabetes and was aware of or recklessly regarding the risk that plaintiff would incur pain and suffering, as well as the risk of serious bodily injury and death, if he did not receive his injections of insulin and lantus.

Correctional officer was thus deliberately indifference to plaintiffs' serious medical needs by refusing to continue to accommodate plaintiffs receipt of insulin treatment. Correctional Ms. Djanah Mccollough

and sergeant Pedro Mirabel deliberate indifference to plaintiffs serious medical needs violated plaintiffs constitutional right to adequate medical care. The conduct of these officers as well as the superintendent Ms. Link exhibited a willful, wanton, malicious, and or reckless disregard, for, or indifference to, plaintiffs constitutional rights. As and direct proximate result of these correctional staff members the (defendants) acts as set forth above, plaintiff sustained physical injuries and psychological harm.

On May 13, 2017 at approximately 6;30am defendant sergeant Pedro Mirabel was escorting myself and the other diabetics to insulin care, and noticed my difficulty walking from the server pain, I could not walk without assistance, Sergeant Mirabel put his arm under mine and assisted me to insulin care without being pat searched or going through the metal detectors, see complaint, ¶¶ 26-27.

The ten (10) incidents of my denial of insulin and medical care because these officers and the superintendent refused to perform a simple security procedure that accommodates inmates who can not clear the metal detector on April 27, 2017 were I was denied medical treatment by the superintendent herself, and officer Ms. Djanah McCollough, see complaint at ¶-¶ 38-45

My painful nerve and back pain was not meet through adequate medical care to relieve my pain and suffering. The medical department did not see that I received my medical attention, nor did the institutional staff seen to it.

Plaintiff suffered blurred vision, nausea, head pain, neck pain, back and leg pain. confusion, perfuse sweating, weakness feelings of fatigue as if I was sleeping into a diabetic comma, plaintiff was left to

suffer, and the damage to my vital organs are left to be determined that
I will suffer for a life time.

On my response to grievance #676998 the superintendents second
level appeal response states, **"while you should not have been denied
your medications"**, However, Superintendent Ms. Link and officer
Ms.Djanah McCollough refused to pat search me and denied my access to pain
medication by preventing me from going to the medication line, this after
I explained that I can not remove my back brace because of server pain,
and without it, every step feels as if someone was pushing a pitch fork
up my bottom in and cause a debilitating pain that prevented taking any
steps forward.

The superintendents reasoning not to allow me the security pat
search that is permissible by policy if you cannot clear the metal
detector was as she states in her second level appeal response, "you have
been witnessed confronting staff in an aggressive manner. As such you
present a security concern and pat searching is not appropriate, see
complaint at ¶ 56, as well as exhibit-B of exhibits. These actions of the
defendants are plainly, and clearly violations of plaintiffs' rights to
medical care, (adequate medical care), of the 8th and 14th United States
Constitutional Amendments, and the Americans With Disabilities Act, 42
U.S.C. § 122112(a), as well as the Rehabilitation Act, 29 U.S.C.§ 794 by
virtue of his diabetic and serious back injuries that effect his daily
activities. See complaint at ¶ 58.

On May 8, 2017 plaintiff Mr. Dews went to inmate sick call seeking
help for his medical disability, and was seen by Ms. Jean Defrangesco,
CRNP, (certified registered nurse practitioner) and told me that "I can
not do anything about it, this is a security issue, but I will E-mail the

7.

medical administrator Mr. Joseph C. Korszniak, (CHCA) and inform him of this problem of officers not allowing you to get off the block to get your insulin and medication care". Nothis was done, plaintiff continued to be denied his medical care.

On May 11, 2017 plaintiff had to file another grievance against officer Ms. Djanah McCollough for refusing to allow me to be escorted by Sergeant Mr. Worth to insulin line 6;30am, the grievance was assigned tracking number #678507 see complaint at ¶¶ 96-97, as well as exhibit-H.

On May 17, 2017 plaintiff Mr. Eugene Dews once again went to sick call for help to inform security about my medical condition. I was seen by Dr. Albright who stated to plaintiff that, "I can not do anything for you I'm sorry. I informed the doctor that pain is shooting down my legs and that in the morning my back pain and nerve pain is at it's worst point and cause major problems of walking.

On 8-4-17 plaintiff received the superintendents second level appeal response to grievance # 678507 exhibit-H where she states that, " Mr. Dews "I have reviewed of your initial grievance, the initial response and your appeal. The housing officers should have been informed of your current medical pass and this should have prevented any issues...".

The superintendent goes on to state in grievance #678507 stating that "..I DO APOLOGIZE FOR THE CONFUSION..." On April 27, 2017 I was eventually issued a medical pass that indicates I have surgical parts in my body, but this pas was disregarded by officer Ms. Djanah McCollough and sergeant Pedro Mirabel. The superintendent goes on to state, " ...however, although you are issued this pass, it does not omit you from any security searches" Throughout plaintiffs' pleadings in ten (10) grievances and the complaint before this honorable Court, this is all plaintiff was requesting.

The superintendent goes on to state in grievance response #678507

that, "...after speaking with staff on your housing unit, it appears this problem has been resolved..." see complaint at ¶-¶ 105-107.

Despite this, plaintiff had to file numerous grievances after these response from the superintendent, making it very clear that the problem of refusing to issue a pat search upon me when I cannot remove my brace and walk and cannot clear the metal detector.

On May 15, 2017 I had to file another grievance upon officer Ms. Djanah McCollough for refusing to allow me to go to get my needed pain medications, this after plaintiff tried to help accommodate the situation by taping cardboard over the rivets on his back brace to see if plaintiff could clear the metal detector and it was a failure. Plaintiff begged and pleaded with officer Ms. Djanah McCollough could she please pat search me so that I could go get my pain medication and her response was, "well that didn't work, so go back on the block, you are still not going to medication line Mr. Daws". see complaint at ¶-¶ 114-116. As well as exhibit-H

### CAUSAL RELATIONSHIP BETWEEN MR. JOSEPH C. KORSZNIAK AND SUPERINTENDENT MS. CYNTHIA Link and PLAINTIFF, DELIBERATE INDIFFERENCE.

On May 19, 2017 plaintiff filed a grievance against the medical department and its' medical administrator Mr. Joseph C. Korszniak, (CHCA) for failure to inform security about my medical conditions, Mr. Joseph C. Korszniak, (CHCA) states in initial review response that, " You state in your grievance that we are negligent in doing our job because security makes you take your back brace off. I think this grievance is misguided. There are clear and precise policies in place for security with regard to searches and the metal detector. The medical department cannot direct security and tell then how to do their jobs" see complaint at ¶ 93, as well as exhibit-H of Mr. Joseph C. Korszniaks, (CHCA) initial response.

Lt. T. McGrier disputes Mr. Korszniaks', (CHCA) opinion, Lt. McGrier states in his initial grievance response of grievance #676016 that, " A medical pass for exemption must be obtained through the medical dept. Administration" see complaint at ¶ 94 as well as exhibit-C of Lt.McGriers' initial grievance response.

Another significant act of deliberate indifference on the part of the medical department Mr. Joseph C. Korszniak, (CHCA) in reference of him not joing his job as the sole administrator in charge of his medical department is that back on May 6, 2017 plaintiff had to file a grievance #677003 on a Doctor Duval for events that took place on May 5, 2017 were a staff personal at the medical department had a conversation on the phone with my housing unit manager Ms. A. Olivieri were this medical personal member told Ms. A. Olivieri that Doctor Duval said that I the plaintiff could take his brace off and walk through the medical detector.

My argument within the grievance was that this doctor made a diagnosis of my medical condition and the level of pain I experience with or without the back brace on, or to examine me to assertain if other injuries are present that is causing such pain.

The grievance was assigned to Mr. Joseph C. Korszniak, (CHCA) for investigation and resolution. On May 11, 2017 Mr. Korszniak, (CHCA) issued his initial grievance response where he states that, " Dr. Duval does not work for the DOC and she is a psychiatrist. I cannot comment on any decision she has made. Your complaint seems to focus on the metal detectors and your brace. That is a security issue and the security policy is very clear as to how these situations are to be handled" see complaint at ¶ 83, as well as exhibit-G initial grievance response.

On May 31, 2017 plaintiff filed an appeal to the superintendent

to grievance 677003, on June 30, 2017 superintendent issued her response
directing her response toward Mr. Korszniak, (CHCA) stating that, "In
your initial response, you stated that Dr. Duval does not work for DOC,
and she is a psychiatrist, the correctional health care Administrator
oversees that Department and therefore can address the grievance regarding
the alleged directives given by Dr. Duval, specifically if Dr. Duval spoke
with a nurse in the medical department and gave such directives. Please
provide a revised grievance response", see complaint at ¶ 85 as well as
exhibit-G remand grievance-notice to grievance officer, (Mr. Joseph C.
Korszniak).

This was an act of **MALICIOUS DECEPT** on the part of Mr. Korszniak,
(CHCA) in his attempt to evade the responsibility entailed within his
position of authority, and conceal to plaintiff that answering this
grievance was upon him.

On August 22, 2017 Mr. Joseph C. Korszniak, (CHCH) issued his
initial grievance remand answer to grievance #677003 as directed by
superintendent Ms. Link stating that, "I have reviewed the written
documents in the record and I can find no evidence that Dr. Duvall gave
any written or verbal direction to anyone regarding Mr. Dews and his
brace. There are no notes to indicate that any nurse had any conversation
with Dr. Duvall regarding this issue and there is no order written with
regard to this issue", see complaint at ¶ 86, as well as exhibit-G remand
response to Mr. Joseph C. Korszniaks', (CHCA) initial grievance response.

On August 31, 2017 I filed my second level remand appeal to
superintendent to grievance #677003, and on October 26, 2017 the
Superintendent issued her remand response stating that, " Mr. korszniak
was not present and could not speak as to what staff were told. Dr Duval

11.

is a doctor, as well as a contract employee, and he would have no autority to contradict what she may have told staff" she goes on to state "it is not clear whom unit manager Olivieri spoke to when she contacted the Medical Department. That person did tell her that they'd spoken to Dr. Duval. However, in contacting Dr. Duvall, she reported that she did not, in fact, spek to anyone on the phone or otherwise about this matter" see complaint at ¶ 88, as well as ¶ 87 of the complaint were plaintiff explained to the superintendent that added as exhibit-A as an attachment to exhibit-G is a request slip from the unit manager Ms. A. Olivieri confirming that she spoke to a staff member at the medical department who relayed that Dr. Duval made the directives of plaintiff could take his back brace off and walk through the detector.

Another failure of responsibility the respondent superior Mr.Joseph C. Korszniak, (CHCA), is his failure to answer Dr. Jean Defrengesco's, (CRNP) e-mail she sent to Mr. Joseph C. Korszniak, (CHCA) on the day plaintiff visited sick call on May 8, 2017 could have prevented serious pain and suffering from intentional wanton infliction of pain by the correctional officers Ms. Djanah McCollough and sergeant Mr. Pedro Mirabel and the superintendent for preventing plaintiff his needed insulin treatment and needed pain medications, by simply e-mailing of faxing the security department and requested if plaintiff could be extended pat search procedure in which is apart of the security policy because of Mr. Dews' medical conditions, but the only response plaintiff received from the medical department was no response of relief only Mr. Korszniak, (CHCA) saying that it's a security issue and I have to go to security. see complaint at ¶-¶ 90-94, as well as exhibits-M,J.

12.

The superintendent saying in her grievance response to grievance #676998, that, **"while you should not have been denied your medication"** see complaint at ¶ 52, but yet, she prevented me from going to get my medication see complaint at ¶-¶ 40-45. These malicious denial of my serious medications was intentional wanton infliction of pain and suffering upon plaintiff, which is deliberate indifference to plaintiffs' serious medical needs, violating plaintiffs' 1st, 8th and 14th United States Constitutional Amendments.

The Medical Administrator Mr. Joseph C. Korszniak, (CHCA) not once investigated plaintiffs numerous visits to sick call to seek knowledge if any of the medical providers requested an order to have Mr. Dews x-rayed or have an MRI done to see if there was some damage in Mr. Dews' back in which cause such significant pain were Mr. Dews could not remove his back brace and could not walk without significant pain that was debilitating at times.

On March 6, 2018 Mr. Dews was called to go to the prison hospital to see the medical director, Dr. Stephen Weiner, Do. Dr. Stephen Weiner informed Mr. Dews that he received an e-mail from Dr. Noel, the head of the medical department at Graterford, Dr.Noel is stationed in Harrisburg.

Dr. Stephen Weiner, DO, said to Mr. Dews that Dr. Noel asked him to check into my back because Mr. Dews has many complaints (grievances) on Dr. Noels' desk. So when Dr. Stephen Weiner, DO looked at Mr. Dews' medical chart, he said that, "I did not know that you had such a major back reconstruction and how significant it was". This is a lie, on July 5, 2017 Mr. Dews sent Dr. Stephen Weiner, DO, a detailed letter/request concerning his back surgery, and the prevention that Mr. Dews' was having getting access to the prison hospital to attend to his insulin care and medication lines by the superintendent, Sergeant Mr. Pedro Mirabel and officer Ms. Djanah McCollough, see exhibit-J.

13.

Dr. Stephen Weiner, DO, said that he is going to order an x-ray to see if anything is going on inside my back that needs to be fixed. On March 10, 2018, Mr. Dews had an x-ray, and on March 20, 2018 Mr. Dews went to inmate sick call to find out the results of the x-ray, he was seen by Dr Joseph P. Walsh, PA-C who informed Mr. Dews that the x-ray revealed two fractured separated screws, scoliosis, and authoritist, this substantiates were the source of Mr. Dews' significant pain, and on some days causes so much pain that even with the back brace tightly fitted, he still endures significant pain that inhibits his ability to walk, this amounts to serious deliberate indifference to Mr. dews' serious medical needs, as well as Dr. Joseph Walsh, PA-C informing Mr. Dews that his A1c was 9.0, which indicates he should never have been denied his insulin care just as indicated by superintendent Cynthis Link in a grievance response, see complaint at ¶ 52.

## LIABILITY OF RESPONDENT SUPERIOR UNDER § 1983 CIVIL ACTION:

The general rule in the Federal Circuit was that the doctrines of respondent Superior was not applicable by itself to render a supervisor or other superior liable under § 1983 for the unconstitutional conduct of his subordinates, MONTELL VS. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658, 98 S.Ct. 2018 (1981), however, under the ever expansion of case law on this subject doctrine is in constant change, where this case has more then a casual connection between the Superior and the plaintiff see, CITY OF CANTON, OHIO VS. HARRIS, 489 U.S. 378, 109 S.Ct. 1197, (1989), (a Superior or Supervisor can be held liable for his or her deliberate indifference to the Constitutional Violation committed by subordinates.

The plaintiff puts forth that on May 8, 2017 when plaintiff went to sick call and was seen by Dr. Jean Defrangesco, (CRNP) certified registered nurse practitioner, and was told by her that she could not do

**14.**

anything but **E-MAIL** Mr. Joseph C. Korszniak, (CHCA), and tell him that you are having a problem getting off the housing unit because of your back brace and the officers refusing to pat search you so you could get to insulin and medication lines.

Plaintiff puts forth that this places the Correctional Health Care Administrator as being involved in the process of plaintiff getting adequate medical care because of his disability. By being directly involved Mr. Joseph C. Korszniak, (CHCA) did not even seek knowledge from the three medical providers, (Dr. Jean Defrangesco on May 8, 2017, and Dr. Albright on May 17, 2017, and Dr. Thomas on Juns 7, 2017) if any of these providers ordered an x-ray to search for any further injuries that could be the cause of the server pain that plaintiff experience, see complaint at ¶-¶ 91, 102, 152.

Furthermore, when Mr. Joseph C. Korszniak did get involved, it was to answer plaintiffs grievance against him and his medical department that he heads, in which he states in grievance #679006 that, "You state in your grievance that we are negligent in doing our job because security makes you take your back brace off. I think this grievance is misguided. There are clear and precise policies in place for security with regard to searches and the metal detector. The medical department cannot direct security and tell them how to do their jobs." see exhibit-J, as well as the complaint ¶ 93.

This is a correct statement I agree, that medical cannot tell security what to do, but, as my medical care takers, it is the medical departments responsibility to alert security to certain injuries that inmates have that may interfere with the metal detector, and **REQUEST** particular security procedures being employed upon the inmate with the medical injuries that at times prevent plaintiff to be able to walk without the functioning of the back brace.

Just as one of the grievance officers state in one of plaintiff grievances for being denied off the block for insulin and medication care because two officers, officer Djanah McCollough, sergeant Mr. Pedro Mirabel and Superintendent Link refusing to pat search plaintiff thereby giving plaintiff his constitutional right to proceed to adequate medical care, see grievance é676016 exhibit-C were Lt. T. McGrier states, "A medical pass for exemption must be obtained through the medical dept. Administration", this places the responsibility upon the medical department, this also connects Mr. Joseph C. Korszniak, (CHCA) with the violations of plaintiffs 8th and 14th U.C.A.

Furthermore, if Mr. Joseph C. Korszniak, (CHCA) would have had an x-ray ordered for plaintiff since his staff was deprived of this guidance and training from their Superior Mr. Joseph C. Korszniak, (CHCA), he would have discovered what was found by x-ray ordered by Dr. Stephen Weiner, DO, being directed by Dr. Noel from central office, that plaintiff has two fractured (separated) screws in his back as well as compression, scoliosis and authoritist, with that Mr. Joseph C. Korszniak (CHCA) falls clearly as being liable under the respondent superior.

CRUMPLEY-PATTERSON VS. TRINITY LUTHERIAN HOSPITAL, 388 F.3d. 588, 590 (8th. Cir. 2004) " A corporation acting under color of law will only be held liable under § 1983 for its' own unconstitutional polices", The Court dismissed the plaintiffs' complaint against the hospital because it did allege a unconstitutional official policy or custom. However, in the instant case the plaintiff not only allege the policy of pat searches are to be applied to those inmates who cannot clear the metal detectors in efforts to assure safety within the institution, and denying plaintiff the use of such pat search procedures and deny plaintiff access off his

housing unit to receive insulin and medication treatment was in violation
of the eighth Amendment, and created acts of deliberate indifference, and
plaintiff file and exhausted numerous inmate grievances of each denial of
adequate medical treatment see exhibits-A through K. Therefore, the
plaintiff showed an unconstitutional policy of the medical department and
the Department of Corrections.

As a result of every changing law, Circuit Court cases following
**MONELL, Supra,** have been required to distinguish between barred § 1983
respondent Superior claim and permissible § 1983 claims where personal
involvement is present, see **McCANN VS. COUGHLIN,** 698 F.2d.112 (2nd. Cir.
1983), and compare **PROVOST VS. CITY OF NEWBURGH,** 262 F3d. 146 (2nd. Cir.
2001). Where the second circuit explained what it meant when it used the
phrase **"direct participation"** in connection with the personal involvement
required for individual liability. After observing that the phase could
lead to either under inclusion or over inclusion, **PROVOST,** id at 154-155,
The Court stated, " Thus, as we understand it, 'direct participation' as
a basis of liability in this context requires intentional participation
in the conduct constituting a violation of the victims rights by one who
knew of the facts rendering it illegal". id. at 155 (footnote omitted).
The Second Circuit expressly refused to reach the issue of wether direct
participation covered defendants who **SHOULD HAVE KNOWN** of the facts
rendering the conduct. Also see **DAVIS VS. ZAHRADNIK,** 600 F.2d. 458 (4th.
Cir. 1979), " by alleging and swearing that warden Zahradnik has neglected
his duty to supervise and control the prison guards, Davis proceeded upon
a proper theory of § 1983 liability---"Id. at 459 N.1.

In the instant case plaintiff Mr. Dews filed ten (10) grievances
alleging the conduct of defendants' all specifically directed there action
to the Department of Corrections policy, the Superintendent Ms. Cynthia

Link and the medical department correctional health care administrator Mr. Joseph C. Korszniak, (CHCA) see initial grievance responses' in Exhibits' A through K.

The actions of constitutional violation where driven as retaliatory actions against plaintiff for taking acting in filing grievances and Civil Complaint.

### THE DEFENDANTS ACTED IN CONSPIRACY TO RETALIATE AGAINST THE PLAINTIFF FOR EXERCISING HIS FIRST AMENDMENT RIGHTS WHICH VIOLATES THE PLAINTIFFS "1st. 8th. and 14th. AMENDMENT PROTECTIONS"

In the instant case, the plaintiff filed a previous law suit, as well as pending suit against Mr. Joseph C. Korszniak, (CHCA) see complaint ¶ 3. Since 2007 plaintiff had no problem with these officers and other officers issuing a pat search for plaintiff to proceed to his insulin and medication needs as well as all other appointments.

It is largely documented in the plaintiffs medical records as well as well as plaintiffs civil action complaint that the plaintiff suffers from back injuries as a result of spinal stenosis, herniated disc in which had to be fused, and two six inch rods and screws surgically put in his back, in which still cause servere back pain as well as neuropathy that is affected by the surgery and instruments in plaintiffs back.

(Under ESTELLE, state officials "act reasonably" when they provide whatever treatment the medical professional decides is appropriate. In contrast, State officials act unreasonable or with "deliberate indifference" when they deny, delay obstruct or otherwise interfere with needed or prescribed medical treatment.) In the instant case the plaintiff was denied his insulin and access to medication lines ten (10) times, by correctional officers Ms. Djanah McCollough, Sergeant Mr. Pedro

Mirabel and the Superintendent Ms. Cynthia Link by preventing access to plaintiffs' medical treatment by discriminating against the plaintiff by providing the pat search procedure to other inmates but not to the plaintiff, see complaint at ¶ 56 as well as exhibit-B where the superintendent states " ...you have been witnessed confronting staff in an agressive manner. As such you present a security concern and pat searching is not appropriate"

Furthermore, see complaint ¶ 130 ware the chief grievance officer from central office states, "....contact with the institution [Graterford] found that if the metal detector can't be cleared, pat searches are conducted...) The Superintendent stated that, "...while you should not have been denied your medication", see complaint at ¶ 52. Superintendent Ms. Link the responds to grievance #678507 stating that, "I do apologize for any confusion". These statements are direct and clear that I was made to suffer without my medication (insulin and pain medications) in violation of my 8th and 14th Constitutional Rights of the United States.

On April 27, 2017, once again, officer McCollough refused to allow me to proceed to 11;00am medication line because I could not clear the metal detector, and Superintendent Ms. Cynthia Link just happened to be on my housing unit at the time. I ask to speak to her, explained the situation, she then went and talked to officer Ms. McCollough, the summoned plaintiff to the door.

Upon stepping outside the housing unit door, superintendent Ms. Link proceeded to explain that, "you are to attempt to clear the detector, if you can not clear the detector, then the officer will pat search you". Plaintiff explained that he performed the attempts to clear the detector three times and officer McCollough still refused to pat search me. At that moment officer McCollough jumped in and stated, "no! he cleared it

ounce, he can again" Plaintiff tried to explain to the superintendent as
he has to the officer numerous times, that some times the metal detector
would clear me and sometimes it will not, the superintendent stated,
"...oh no! We are not going to have this, go back on the block" I stated
that I am in server nerve pain and I need my pain medication as well as
my psychiatric medication, the superintendent stated again, "I am giving
you a direct order to go back on the block", see complaint at ¶-¶ 40-45.

Plaintiff have tried to explain to this officer McCollough and
the superintendent, that on May 1, 2017 he asked sergeant Mr. Worth who
was escorting my units diabetics to insulin and medication treatment,
could he please be a witness to the facts of the problem with the metal
detectors, some clearing me and some do not. Plaintiff walked through
C-B housing unit metal detectors and they sounded off. Plaintiff proceeded
to walk through A housing unit and the security gate and those detectors
cleared plaintiff, none of the defendants wanted to hear plaintiff out,
see complaint at ¶-¶ 67-68.

Plaintiff had his niece call superintendent Ms. Link at Graterford
and was told by Superintendent that, "plaintiffs' prevention from access
to his insulin and medication treatment would stop". It did not, it
continued numerous times. Plaintiffs family called Central Office at
Harrisburg and spoke to two personal members, (1) was a member of the
department in charge of medical care at Graterford, and plaintiffs niece
was told by her that,"even though the officers are preventing plaintiff
from access of medical care, why isn't the medical department assuring
that plaintiff receives his needed medical care?" This member informed
plaintiffs' niece that, "I'm going to Graterford tomorrow, and will look
into this matter. Nothing changed, plaintiff was continued to be denied
access to his medical care. Plaintiffs' niece phoned Central Office once

again, this time plaintiffs niece Ms. Lorraine Durham spoke to a Mr. Jeff Reuschen, but still nothing changed, plaintiff continued to be denied off his unit to receive his insulin and medication care. See complaint at ¶-¶ 124-130.

See **Estelle**, 429 U.S. at 104-105 deliberate indifference can be manifested" by prison doctors in their response to prisoners needs or by prison guards in intentionally denying access to medical treatment or intentionally interfering with the treatment once prescribed."
ROUSE V. PLANTIER, 182 F3d. 192, 197 (3rd. Cir. 1099) (deliberate indifference exist when a prison official; (1)- Knows of a prisoners' need for medical treatment but intentionally refuses to provide it; (2)- delays necessary medical treatment based on a non-medical reason; or (3)- prevents a prisoner from receiving needed or recommended medical treatment). Despite plaintiffs' repeated filing of grievances, verbal conversations, family member calling staff at Graterford and spoke directly to Superintendent Ms. Cynthia Link, as well as speaking to members of Central Office in Harrisburg concerning plaintiffs' repeated denial of his serious medical treatment with the approval of Mr. Joseph C. Korsznial, (CHCA)-Correctional Health Care Administrator and Superintendent Ms. Cynthia Link at Graterford; as interpreted by the Courts in **Estelle**, that these acts amount to **"DELIBERATE INDIFFERENCE"**, a violation of plaintiffs 8th and 14th United States Constitutional Rights.

This was done with the full knowledge of the medical administrator Mr. Joseph C. Korszniak, (CHCA) that the defendants Superintendent Ms. Cynthis Link of Graterford and her officers Ms. Dajanah McCollough and sergeant Mr. Pedro Mirabel that the plaintiff would start to having serious effects from not receiving his insulin treatment when sought and

pain medications as well as mental health medications from their
retaliatory actions against plaintiff for exercising his 1st and 14th
Amendment rights, and, from previous civil actions against defendant Mr.
Mr. Korszniak, (CHCA) and the medical department, and current pending
civil litigation, see complaint at ¶ 3.

ADMINISTRATIVE LAW AND PROCEDURE:

Substantive regulations, when properly enacted under Commonwealth
documents Law have the force of Law and enjoy general presumptions of
reasonablenss 45 P.S. § 1102-1208. " Where an agency, acting pursuant to
delegate legislative authority, seeks to establish a substantive rule
creating a controlling standard of conduct, it must comply with the
provisions of the Commonwealth Documents Law. That statute sets forth
formal procedures for notice, comment and ultimate promulgation in
connecting with the making of rules that establish new law, rights or
duties. See generally Pennsylvania Human Relations COMMONWEALTH VS. UNION
TOWN AREA SCHOOL DISTRICT, 455 Pa. 52, 80-81 n. 29, 313 A2d. 156, 171 n.
29 (1973)." " Such substantive regulations, sometimes known as
legislative rules when properly enacted under thee Commonwealth Documents
Law, have the force of law, COMMONWEALTH VS. DEPASQUALE, 509 Pa. 182, 187,
501 A2d. 626, 628 (1985)(Citations Omitted), and enjoy a general
presumption of reasonableness. see COMMONWEALTH DEPARTMENT OF ENVIRONMENT
RESOURCES VS. LOCUST POINT QUARRIES, INC., 483 Pa. 350, 360, 396
A2d. 1205, 1210 (1979)". Neither has the refusal to deny apart of a
security procedure, (PAT SEARCH) in which prevented plaintiff from
receiving medical care for his diabeties, neuropathy and associated back
pain from prior back surgery source of complaint been submitted or
approved by any administrative board connected with the Department of

Corrections, in short, Mr. Joseph C. Korszniak, (CHCA), the
Superintendent Ms. Cynthia Link, correctional officers Ms. Djanah
McCollough and sergeant Mr. Pedro Mirabel were disregarding plaintiffs'
serious medical needs out of pure retaliation.

### THE PLAINTIFFS' COMPLAINT MEETS THE FOUR REQUIREMENTS TO STATE A CLEAR CLAIM OF RETALIATION IN VIOLATION OF THE UNITED STATES CONSTITUTIONS                    :

### 1. PROTECTED CONDUCT:

Plaintiff had a first Amendment right to access of the Courts
without retaliation or fear of retaliation. To be free from deliberate
indifference and cruel and unusual punishment under the eighth Amendment,
and a substantial procedural due process right to have his complaints
reviewed without an arbitrary and capricious and or vague thinly veiled
response.

### 2. ADVERSE ACTION:

Plaintiff suffered from fear of retaliation if he continued to
filing grievances' in an effort to simply receive proper medical
treatment to save his life, and the only thing plaintiff received was
additional retaliation from the defendants for plaintiffs efforts to seek
relief and the relief sort was be to be extended pat down search because
of his ailing back condition so he could receive his needed insulin and
pain medication, and not be denied ten (10) times as a result of having
to wear a back brace that set the metal detectors off, this denial
brought on server blurred vision, perfuse sweating, confusion,
disorientation, vomiting, fatigue, and subjected to future serious organ
problems, kidney and liver failure and blindness as well as amputation.

### 3. CAUSAL CONNECTION:

The substantial motivation factor in the instant case that cased the defendants the adverse actions in denying plaintiff his needed insulin treatment and pain medications was brought about by the resentment, anger and willful and intentional harm toward the plaintiff was a result of plaintiffs' previous law suit, and his pending suit, see complaint ¶ 3.

4. <u>WETHER LEGITIMATE REASONS EXISTED FOR THE ADVERSE ACTIONS</u>:

Surgested answer "NO", the plaintiff has proven the above three elements and has established an presumption of the defendants retaliation.

For all the foregoing reasons, the plaintiff respectfully request the Honorable Court to deny any filings by the defendants to dismiss this civil action complaint as it meets all of the requirements of the " PRISON LITIGATION REFORM ACT ",  (PLRA), and the Federal Statutory requirements of 42 U.S.C. § 1983, the plaintiff forever prays to proceed forward.

Wherefore, This Honorable Court must find that the clams the plaintiff presented in accompany § 1983 Civil Suit are violations of the United States Constitutions and find for the plaintiff and against the defendants.

Respectfully Submitted

Date:_6 - 7 - 18_____

Eugene Gregory Dews

## VERIFICATION

I Mr. Eugene Gregory Dews, hereby certify that I declare under penalty of perjury that all information contained herein is true and correct.

Date: 6-7-18

_Eugene Dews_
Eugene Gregory Dews

---

## CERTIFICATE OF SERVICE:

I Mr. Eugene Gregory Dews, hereby certify that I declare under penalty of perjury under the Laws of the United States that the foregoing is true and correct. 28 U.S.C. § 1746 (1).

### MANNER OF SERVICE:

UNITED STATES POSTAL SERVICE, FIRST CLASS MAIL, POSTED PREPAID.

### DOCUMENTS SERVED:

MEMORANDUM OF LAW

### PERSONS' SERVED:

Ms. Cynthia Link, Superintendent
State Correctional Institution
Graterford, P.O. Box 244
Graterford, Pa. 19426

Correctional Officer Ms. Djanah
McCollough, State Correctional
Institution Graterford
P.O. Box 244
Graterford, Pa. 19426

Department Of Corrections, 1920
Technology Parkway
Mechanicsburg, Pa. 17050

Correctional Officer Mr.Pedro Mirabel
State Correctional Institution
Graterford, P.O. Box 244
Graterford, Pa. 19426

Mr. Joseph C. Korszniak, (CHCA)
Correctional Health Care
Administrator; Correctional
Institution Graterford, P.O. Box 244
Graterford, Pa. 19426

Correct Care Solutions, 1283
Murfeesboro, Rd. Suit 500
Nashville, Tn. 37217

Date: 6-7-18

_Eugene Dews_
Eugene Gregory Dews BJ-3445
SCI-GRATERFORD
P.O. Box 244
Graterford, Pa. 19426.

**U.S. Department of Justice**
**United States Marshals Service**

**PROCESS RECEIPT AND RETURN**
*See Instructions for "Service of Process by the U.S. Marshal"*
*on the reverse of this form.*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| EUGENE GREGORY DEWS, Pro-se,   BJ-3445 | |
| DEFENDANT | TYPE OF PROCESS |
| CYNTHIA LINK, EX-SUPERINTENDENT | 42 U.SC. § 1983 |

SERVE { NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
Department Of Corrections

➤ {

AT    ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
SCI-~~Graterford~~, P.O. Box 244, ~~Graterford~~, Pa. 19426
Phoenix                                   Collegeville,

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

Eugene Gregory Dews, BJ-3445,
P.O. Box 244  *SCI-Phoenix*
~~Graterford~~ Pa. 19426-0244  *Rt-29*
*Collegeville,*

| | |
|---|---|
| Number of process to be served with this Form - 285 | 1 |
| Number of parties to be served in this case | 6 |
| Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service*):

Fold                                                                                     Fold

This individual can be reached through present Attorney, Ms. Kathy
A Le, Esquire, Deputy Attornye General; Office of Attorney general, 21
South 12th street, 3rd. Floor, Philadelphia Pa. 19107-3603. This defendant
is currently being represented by this attorney General in case # 17-3703
(JTS).

| Signature of Attorney or other Originator requesting service on behalf of: *Eugene Dews*  ☑ PLAINTIFF  ☐ DEFENDANT | TELEPHONE NUMBER  610-489-4161 | DATE  8-20-18 |
|---|---|---|

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. *(Sign only first USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin  No. | District to Serve  No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (*See remarks below*)

| Name and title of individual served (*if not shown above*) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|

| Address (*complete only if different than shown above*)  RECEIVED  OCT - 3 2018 | Date of Service | Time | am  pm |
|---|---|---|---|
| | Signature of U.S. Marshal or Deputy | | |

| Service Fee | Total Mileage Charges (*including endeavors*) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS:

| PRIOR EDITIONS MAY BE USED | **1.  CLERK OF THE COURT** | FORM USM-285 (Rev. 12/15/80)  (Instructions Rev. 12/08) |
|---|---|---|